Sheed, J.,
delivered the opinion of the Court.
The prisoner was put upon his trial before the Criminal Court of Shelby county, at the July Special Term of said Court, 1870, upon his plea of not guilty to an indictment for 'grand larceny. He was found *233 guilty, and bis term of confinement in the Penitentiary was fixed by the jury at the period of five years. His motions for a new trial and in arrest of judgment being overruled, judgment was pronounced according to the verdict, and the prisoner appealed in error. Having, abandoned his .appeal, and having been committed in pursuance of the verdict and judgment, his counsel has presented the record of the cause here, upon an application for a writ of error, which was granted, and the prisoner arraigned at the bar of this Court.
Among the errors of law assigned here, upon which a new trial is demanded, is the refusal of the Court to allow the prisoner to make his own statement before the jury, in regard to the offense of which he was accused. The application, and ruling of the Court upon it, are thus set forth in the bill of exceptions: “The defendant announced that he had no witness to be examined. He then moved the Court to be permitted to make an un-sworn statement in regard to the charge for which he was indicted and then on trial, to the Court and jury, which motion was overruled and refused by the Court.” The prisoner had a right to make an explanation of the facts in proof against him, and to make an argument upon them in his own behalf; but he had no right to state any facts not in proof; and the majority of the Judges are of opinion, the writer dissenting, that the Court did not err in its ruling upon the prisoner’s application.
"We are not aware that the clause of the Constitution of this State, which guarantees to a person accused of crime the right to be heard by himself and counsel, *234 has ever been before tbis Court for construction. The section of the Constitution in which this privilege is secured, is in the words following:
“That in all criminal prosecutions, the accused hath a right to be heard by himself and his counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face; to have compulsory process for obtaining witnesses in his favor; and in prosecutions by indictment or presentment, a speedy public trial by an impartial jury of the county or district in which the crime shall have been committed; and shall not be compelled to give evidence against himself:” Art. 1, s. 9.
In order to effectuate the right of the accused in this respect, it was provided by statute, that, “in all criminal prosecutions, the accused is entitled to a speedy trial, and to be heard in person and by counsel:” Code, 4992. This provision is general, and applies to all criminal prosecutions, in whatever form they may be had. There is a special enactment elsewhere in the Code, which defines the duty of the justice upon a preliminary investigation, when the accused is arraigned before him. This provision is in the words following:
“When the examination of the witnesses on the part of the State is closed, the magistrate shall inform the defendant that it is his right to make a statement in reference to the charge against him, or that he may waive the same; and-, such waiver can not be used against him on the examination before the magistrate, or on trial. The magistrate may, with the defendant’s consent, put to him the following interrogatories only: *235 1. What is your age? 2. Where were you born.? 3. Where do you reside, and how long have you resided there? Give any explanation you think proper of the circumstances appearing in the testimony against you, and state any facts which you think material to your defense. After the waiver of the defendant of his right to make a statement, or after he has made it, his witnesses, if he produces any, may be sworn and examined.” Code, 5057, 5059, 5060.
The right of a prisoner to be heard by himself and his counsel is only guaranteed by the State Constitution. It will be observed that the Constitution of the United States gives him the right to have the assistance of counsel in his defense, while the Constitutions of the other States of the Union give him the right to be heard by himself or his counsel. It was not among the boasted liberties of the English subject, vouchsafed by Magna Gharta, that a prisoner could either be heard in his own defense by himself or his counsel. The great guaranty, that no freeman shall be taken or imprisoned, or disseized from his freehold or liberties or immunities, nor outlawed, nor exiled, nor in any manner destroyed; nor will we come upon him or send against him, except by legal judgment of his peers or the law of the land; we will sell or deny justice to none, nor put off' right or justice;” though it secured to the Englishman the right of trial by jury, and is the chief corner-stone of the solid fabric of British freedom which exists at this day, and the foundation of our own fervid liberty, was yet wanting in some humane provision by which the unfortunate citizen accused of felony or treason, might *236 have an opportunity of showing bis innocence otherwise than by the failure of the King to demonstrate his guilt.
It was a strange and notable inconsistency in English criminal jurisprudence that would shield a prisoner as he sat isolated in the dock with the presumption of innocence, and would yet forbid him for so many centuries— except as a matter of grace — to utter a word by counsel in his own defense, or to have the assistance of counsel in marshaling his proof to make good the presumption that mocked him with the illusion that English justice was tempered with mercy. It was reserved to the vigorous Anglo-Saxon of another hemisphere to assert and maintain the invaluable right thus ignored by the Barons at Runny mede, that the citizen accused of crime should have his own advocate and counsellor to vindicate his innocence, as well in matters of fact as matters of law, and to see to it that he should not be taken, or imprisoned, or disseized of his liberties, or outlawed, or exiled, or in any manner destroyed, except by the judgment of his peers or the law of the land. It was within the last half century that the Act of 6 and 7 W. 4, c. 114, was enacted by the British Parliament, entitled “An Act for enabling persons indicted of felony to make their defense by counsel or attorney.” The first section provides that, “all persons tried for felonies shall be admitted, after the close of the case for the proseeution, to make full answer and defense thereto, by counsel learned in the law, or by attornies, in courts where attornies practice as counsel.” By the second section, it is further declared and enacted that, “in all cases of summary convictions, persons accused shall be admitted to make their *237 full answer and defense, and to have all witnesses examined and cross-examined, by counsel or attorney:” 2 Lewin’s Crown Cas., 262. “At common law,” said Sir William Biackstone, “it is a settled rule that no counsel shall be allowed a prisoner upon his trial, upon the general issue in any capital crime, unless some point of law shall arise proper to be debated.” “A rule,” he says, “which, however it may be palliated under cover of that noble declaration of' the law, that the Judge shall be counsel for the prisoner, seems to be not at all of a piece with the rest of the humane treatment of prisoners by the English law:” 2 Bl. Com., 285.
But Sir Edward Coke gave a reason for the refusal of counsel: “Because the evidence to convict a prisoner should be so manifest, as it could not be contradicted:” 3 Inst, 137. Which Lord Nottingham declared, “was the only good reason that could be given for it:” 3 St. Tr., 726. While this rule of the English common law that refused the assistance of counsel in matters of fact to a prisoner indicted of treason or felony, was abrogated by statute, as to treason, in the reign of William III, yet, though greatly modified in practice, it continued to be the rule in felonies until the statute of W. 4, e. 114, already cited: 1 Chitty Cr. L., 410.
It was in view of this state of the common law in England upon this question, which was not only a reproach to the criminal jurisprudence of that country, but was in derogation of the principles of Magna Charta itself, and opposed to all the traditions of English .liberty, that the invaluable right of a prisoner to be heard by counsel was incorporated in the fundamental law of this *238 country; and his right to be heard by himself, and his counsel, was engrafted upon the organic law of this State. And the question now recurs, what is the meaning of those words in the Constitution of Tennessee, that the prisoner shall have the right to be heard by himself and his counsel. Do they mean, as it is intimated at the bar that the court below interpreted them in this case, that the prisoner can only be heard as an advocate in his own behalf in the presentation of the law and the facts of his case to the jury; or do they mean that he can make such an explanation of the circumstances which have been proven against him, as he may may see proper, in order to elucidate their effect, and to solve them into consistency with the hypothesis of innocence. They certainly do not mean that he may become a sworn witness in his own behalf; for the moment he becomes a witness in the cause, he becomes, under the rules of law, subject to cross-examination, and all the usual expedients for testing the verity of his statements; and the very section which gives him the right to be heard by himself or his counsel, forbids that he be compelled to testify against himself.
By a statute of Michigan, which makes parties competent witnesses, and allowable, as well as compelable, to testify as other witnesses, it is provided, that it shall not be construed to give the right to compel a defendant in a criminal case to testify, but any such defendant shall be at liberty to make a statement to the court or jury, and may be cross-examined on such statement. Under that statute, it was held that such defendant was not entitled to be sworn as a witness in his own behalf, but only to *239 make a statement to the court or jury without oath: The People v. Thomas, 9 Mich. R., 314. In that case, it was said by Campbell, J., “If we were to hold that a prisoner, offering to make a statement, must be sworn in the cause as a witness, it would be difficult to protect bis constitutional rights, in spite of every caution, and would often lay innocent parties under unjust suspicion, when they were honestly silent, and embarrassed and overwhelmed by the shame of a false accusation. But, perhaps the worst evil would be the degradation of our criminal jurisprudence, by converting it into an inquis-itory system, from which we have thus far been happily delivered.”
The learned Judge cites the case of Regina v. Malings, 8 C. & P., 242, where the prisoner was indicted for maliciously wounding the prosecutor with intent to do him some serious bodily harm. The prosecutor and the prisoner only were present, and the prosecutor made out the case for the Queen. Baron Alderson allowed the prisoner to make a statement to the jury before his counsel addressed them, and the jury were satisfied with his explanation and found him guilty of a simple assault only. He cites, also, the case of Regina v. Walking, 8 C. & P., 243, where the prisoner, on the authority of Regina v, Malings, was permitted to read a .written statement. Also, cites the case of Regina v. Frost, 1 Mod. St. Trials, 71, where the prisoner, on a charge of treason, was permitted to address the jury, but waived his right to do so. And the learned judge concludes that their could be no object in such a practice except to allow the accused to tell his own story: 9 Mich., 314. *240 The practice seems to have been followed in Massachusetts, when there was no statute on the subject, and was traced to the common law. In the celebrated trial of Prof. Webster for the murder of Dr. Parkman, after the close of the argument, the Chief Justice thus addressed the prisoner: “John W. Webster, before committing this cause to the jury, if you have anything to add to the arguments which have been urged on your behalf by your counsel, or anything which you may deem material to your defense by way of explaining or qualifying the evidence adduced against you, you are at liberty now to address it to the jury”: Trial of Dr. Webster, 449. Upon the trial of John Frost for high treason, in 1840, after the counsel for the prisoner had concluded his argument, Lord Chief Justice Tindal thus addressed the prisoner: “John Frost, now is the proper time for you to be heard if you wish to address anything to the gentlemen of the jury beyond what your counsel have said. You will not be allowed to be heard after the Solicitor General has closed the case on the part of the prosecution”: 1 Town. State Trials, 71. From which it seems that the custom of permitting the prisoner to speak for himself prevails in treason cases as it did before the Act of 6 & 7 William IYV c. 114, which act received the royal sanction in August, 1836, and took effect in October thereafter.
While it is true that, as a general rule, legislative construction of a statute is not of much weight; yet, under all the circumstances connected with the introduction of the statutes upon this subject into the Code, we are of opinion that these statutes have correctly *241 interpreted ■ the right of the prisoner in this respect as indicated in the directions of the magistrate to the prisoner, as already cited, or so much thereof as admits an explanation of the facts in testimony against him, and that such was the legislative construction of the constitutional provision. . And the sense of the provision is embodied in the words of the magistrate as addressed to the prisoner upon his arraignment before him: “Give any explanation you think proper of the circumstances appearing in the testimony against you.” We do not think it was ever contemplated that the prisoner should be sworn or examined as a witness, or cross-examined as to what he may state, or be required to appear as his own advocate, or that it was intended to allow him to narrate facts not otherwise shown to the jury. That provision was founded upon a profound knowledge of human nature, and a close and careful observation of human transactions. An innocent person is sometimes entangled in a web of suspicion by a curious combination of facts, which no one else can explain but himself. These facts unexplained may point unerringly to the prisoner as the guilty person. The skill or eloquence of his counsel can not reconcile the facts proven with the hypothesis of innocence. He alone may be possessed of the clue. He alone may be able by a simple explanation of circumstances which now seem inexplicable otherwise than upon the assumption of his guilt, or by putting this and that fact together, to remove every shadow of suspicion from himself. This may be a perilous adventure for the guilty man, but the jury are to be the judges of the truth, and they *242 will not fail to distinguish between the cunning version of guilt and. the ingenuous explanation of innocence.
We are of opinion that the prisoner in all criminal prosecutions, after the testimony has been heard for and against him, has a right to be heard in an argument in his own behalf and as his own advocate; or in an explanation of^the circumstances which have been testified against him. That it is erior to deny him this right,- That in such case he is not to be sworn or cross-examined as a witness; but that a jury may' consider .a' clear, consistent refutation of guilt to be deduced froifi an argument which explains, to their satisfaction, the circumstances of suspicion by which the prisoner was before complicated; or, they may pay no attention to it whatever. It is not testimony, in its legal sense, but the logic of facts; which, operating upon a mind in quest of the truth, induces an honest conviction that the cloud of guilt which had been generated by the evidence in the cause, has been dissipated and removed by the explanation of the prisoner. If he wishes to submit an argument upon the case, he has a right to do so; or, if he would simply explain the facts ali’eady in testimony, then he may do so. In other words, the Constitution guarantees to every prisoner the right to explain the case made against him, in his own way. He may waive the right, if he chooses, but no court can deprive him of it. If he demands it, the court should at once instruct him that he may make an argument or an explanation of the ■circumstances proved against him, but that he can state no facts not already shown to the jury.
*243 It appears in the bill of exceptions, that the prisoner was in the employment of the prosecutor. The latter returning home after an absence of a few hours, found that some one had taken off some of his goods. The prisoner having left the premises during the prosecutor’s absence, was at once suspected as the thief. He Avas pursued and arrested, and the goods found upon his person. The prisoner admitted to the prosecutor, a short time after his arrest, that he had taken the goods, and produced and handed to the prosecutor a bureau key, which he said “caused him to take the goods.” He had, during the absence of the prosecutor, it seems, obtained possession of the key, with which, he said, he unlocked the bureau and abstracted the goods, intending to make sale of them. The testimony of the prosecutor as to this statement, was objected to, as evidence of a confession obtained by improper influence. It is alleged, that the prisoner was terrified by the threatening conduct of the prosecutor, and, under the influence of that terror, made the confession. We do not agree with the prisoner’s counsel in this respect, and hold that the court committed no error in admitting the testimony. When, upon an indictment for crime of any grade, the corpus delicti has been clearly established, a deliberate confession of guilt, uninfluenced by the hope of impunity, or reward, or the fear of punishment in any manner or degree, is regarded as a most effective proof in the law; yet it is a species of evidence which is to be received with the greatest caution; or, as said by this court, “with great distrust and under very solicitous apprehensions for the wrong it may do:” State v. Fields, Peek’s R., 140; Mc- *244 Glothlin v. State, 2 Cold., 223; Whitesides v. State, 4 Cold., 175; Deathridge v. State, 1 Sneed, 75. And when confessions once made under fear or hope, are repeated, it is presumed that a subsequent confession is made under the same influences; and the burthen is ujDon the prosecutor to show that this is not so: Deathridge v. State, 1 Sneed, 75; State v. Roberts, 1 Dev., 259; et. vid., State v. Gregory, 5 Jones, (N. C.,) 315; State v. Scates, 5 Id., 420. And it is held, that if there be a doubt as to the legality of the manner of obtaining a confession of guilt, and there be other evidence ample to support the conviction, there will be no reversal on account of the confession: Simpson v. State, 4 Hum., 456. It was held, in the case of The State v. Moon, 1 Hay., 582, that a confession extorted and uncorroborated by circumstances, weighs nothing; but a confession, whether extorted or not, that relates circumstances with which the prisoner could not well be acquainted but as the perpetrator of the crime, and which circumstances are proved by other witnesses to have actually existed, is testimony proper to be left to the jury: 1 Hay., 582.
When the prosecutor pursued the prisoner on the day of the alleged theft, he overtook him walking along the road in the direction of Memphis. The prisoner had in his possession the prosecutor^ gun, and the other lost goods also. As the prosecutor approached him, he, the prosecutor, being also armed with a gun, drew it upon the prisoner and commanded him to halt, which the prisoner did. In a moment thereafter, the brother of the prosecutor also rode up, and he too being armed with a gun, observed to the prisoner that the prosecu *245 tor ought to have shot him. The prisoner was then arrested, and was told by the prosecutor that no harm should be done him. The prosecutor also told him he should not be harmed, at the moment the brother of the prosecutor made the remark referred to. The prosecutor states positively, that he did not otherwise threaten the prisoner, than by drawing the gun upon him in order to make him halt; and that at no time was he threatened, by him or any other person; and that no inducements whatever were held out to him in order to obtain a confession; but that, after the party had, upon their return, traveled about two and a half miles, the prisoner voluntarily made the statement referred to.
We do not think that this confession falls within the rule; and we hold that his Honor, the Judge of the Criminal Court, committed no error in admitting the testimony.
The judgment will be affirmed, and the prisoner will be recommitted.
FeeemAN, J.,
delivered the following opinion:
While I agree in the judgment of the Court in this case, and think the judgment of the Circuit Court should be affirmed, I regret I can not assent to the opinion of my brother, Sneed, for reasons which I think proper to present.
1st. I think no opinion or argument of this court is necessary to maintain or assert the constitutional guaranty, that in all criminal prosecutions the accused hath a right to be heard by himself and his counsel. This right has *246 never, to my knowledge, been denied to any one accused of crime, in any court of tlris State.
2nd. We expressly bold that it was not denied in this case, by affirming the correctness of the action of the court.
3rd. . I think the opinion of my brother, Sneed, is calculated to mislead, as the propositions asserted in the argument, and the general current of the reasoning, would lead to. the opposite result from that which is given in its conclusion as the judgment of the court.
4th. I hold that the clause in the Constitution, that a prisoner may be heard in his own defense in all criminal prosecutions, and may also be heard by his counsel, means simply that such counsel shall make such argument in -his defense, against the prosecution, as may be warranted by the law and the facts of the case; and that, being heard by himself, means precisely the same thing, no more, no less. That this privilege can not mean, what would be understood by, “making an unsworn statement,” in regard to the charge for which he stood indicted. That this proposition would naturally mean to give a narrative of facts in reference to the charge, and not an argument on the facts already in proof. If his application only meant a statement of the facts already proven, then it would be unnecessary and improper, as this is to be done by witnesses sworn, and subject to cross-examination. If it meant that he was to be permitted to do more than this, and he was to state other facts not in proof, or make any narrative or statement of facts in reference to the charge against him, then it was not the priv *247 ilege given by the Constitution; unless we. should hold that counsel may be permitted to make an unsworn statement Of facts to the jury, for the same hearing is given him by counsel, under the Constitution, that is given by himself.
The fact that the provision of our Constitution grew out of a denial, by the Law of England, of the right on the part of a prisoner in criminal prosecutions, to be defended in an argument upon the facts of the case, before the jury, clearly points to the true meaning of this provision; that is, that he shall have this right in this State, and shall also continue to have the right, which the prisoner had in England, of being heard by himself — that is, of arguing his own case. In other words, that he shall have the privilege of being defended in an argument before the jury, by counsel, in addition to the common law privilege of defending himself. If it had simply been said he should be heard by counsel, then it might have been held he could not be heard by himself as well, and therefore both rights are given in express terms.
If it had been simply said in the Constitution that he should be heard by counsel, then it would never have been claimed that such hearing involved the right to make an unsworn statement of facts to the jury, but all would at once have agreed that he was to be heard in his defense by counsel in the ordinary way— not in the way of statement, but of argument on the law and facts of the case. If this be correct, it must be equally clear, that the same character of hearing is *248 to be had I>y himself, as there is n©' difference in the character of the hearing made in the Constitution.
If the opinion of my learned brother means only this, then the Constitution is too clear on the question for exposition or construction. If it means anything beyond this, then I think it is not the law or true exposition of the Constitution.
For these reasons, I deem it my duty to express my opinion in this case, and to indicate what I think the true construction of the constitutional provision in question.
I agree that there is no error in the action of the court below, and that the judgment should be affirmed.