UNITED STATES of America, Plaintiff-Appellee,

v.

Robert Neil CONDER, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

Bernard Joseph GROGAN, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee,

v.

William Moore PEGRAM, Defendant-Appellant.

Nos. 19271–19273.

United States Court of Appeals, Sixth Circuit.

March 31, 1970.

Lloyd Tatum, Henderson, Tenn., court appointed, for appellant Conder.

Bernard Joseph Grogan, in pro. per.

James P. Diamond, Jackson, Tenn., court appointed, for appellant Pegram.

William A. McTighe, Jr., Asst. U. S. Atty., Memphis, Tenn., for appellee, Thomas F. Turley, Jr., U. S. Atty., Memphis, Tenn., on brief.

Before PHILLIPS, Chief Judge, and CELEBREZZE and PECK, Circuit Judges.

JOHN W. PECK, Circuit Judge.

The appellants in these combined appeals were jointly tried and convicted by a jury on various counts of a twelve-count indictment charging them with conspiracy to burglarize United States Post Offices, burglary of two Post Offices and the interstate transportation of goods stolen from three Post Offices.

Six defendants were originally indicted, but only five were jointly tried below and only three of the five have appealed their convictions. The sixth defendant, William Kenneth Knight, plead guilty to the charges at Tampa, Florida, and later testified as a witness for the government at the appellants' trial. Based largely on Knight's testimony, the government's evidence established that Knight, along with appellants Grogan and Pegram, burglarized Post Offices in Lexington and Saulsbury, Tennessee; that Knight and appellant Pegram burglarized a Post Office in New Albany, Mississippi and transported the fruits of the crime to Decaturville, Tennessee. They were there turned over to appellant Conder, who transported them to Chicago, Illinois; and that appellant Grogan disposed of the postage stamps stolen from each of the Post Offices in Chicago, Illinois.

Most of the issues raised in these appeals concern all three appellants, although the individual appellants have stressed some issues more strongly than others. In addition, appellants Grogan and Pegram have raised issues which concern only them. We will turn first to these individual issues.

## I. APPELLANT GROGAN'S RIGHT TO DEFEND PRO SE.

Appellant Grogan contends that the District Court committed reversible error in refusing to permit him to conduct his defense *pro se*. In particular Grogan, who refused this Court's offer to appoint counsel on appeal, contends in his brief that the District Court erred by refusing to permit him to enter objections or cross-examine witnesses during the course of the trial.

The record shows that upon the initial arraignment of all the defendants Grogan informed the District Court that he wished to represent himself and that he did not wish to have counsel appointed to represent him. The District Court acknowledged Grogan's right to proceed *pro se*, but after fully explaining his rights to him, urged him to accept appointed counsel. Grogan again declined counsel. However, some weeks later, after he had complained to the District Court of not having the proper books and facilities to prepare certain motions which he wished to file, the District Court appointed counsel to assist Grogan. At the time of the appointment the Court again acknowledged Grogan's right to proceed *pro se* and made it clear that the appointed counsel was not to force himself on Grogan. Grogan acquiesced to the appointment, and, as will be more fully discussed below, availed himself of appointed counsel's assistance. During the period of approximately six months prior to trial, numerous motions were filed on Grogan's behalf. While it appears that Grogan may have prepared and argued at least some of these motions, all of the motions were signed and filed by Grogan's appointed counsel. More significantly, when the trial commenced Grogan's counsel, along with the attorneys for the four other defendants, participated in the selection of the jury, made an opening statement and conducted cross-examination of the first nine prosecution witnesses. Grogan made no objection to counsel's performance of any of these activities, but on the second day of trial, just before the government's chief witness, co-defendant Knight, was about to testify, Grogan's counsel informed the Court that Grogan wished to participate in his own defense by making objections to the admissibility of evidence. The District Court ruled, however that Grogan would not be permitted to object personally to the admissibility of evidence, and it is this ruling to which Grogan objects.

■■ While not as often the subject of litigation, the right of a defendant in a criminal case to defend *pro se* is as clearly established as a criminal defendant's right to counsel. *See, e. g.,* Carter v. Illinois, 329 U.S. 173, 174, 67 S.Ct. 216, 91 L.Ed. 172 (1946); Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942); Johnson v. Zerbst, 304 U.S. 458, 468–469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); United

States v. Burkeen, 355 F.2d 241, 245 (6th Cir.), *cert. denied*, Matlock v. United States, 384 U.S. 957, 86 S.Ct. 1582, 16 L.Ed.2d 553 (1966); United States v. Johnson, 333 F.2d 1004, 1005 (6th Cir. 1964). The right to defend *pro se* and the right to counsel have been aptly described as "two faces of the same coin," United States v. Plattner, 330 F.2d 271, 276 (2d Cir. 1964), in that the waiver of one right constitutes a correlative assertion of the other. While it may be within the discretion of a District Court to permit both a criminal defendant and his attorney to conduct different phases of the defense in a criminal trial, see United States v. Burkeen, *supra*, for purposes of determining whether there has been a deprivation of constitutional rights a criminal defendant cannot logically waive or assert both rights. The defendant must make a choice, and he should not be permitted to manipulate his choice so that he can claim reversible error on appeal no matter which alternative he apparently chose in the District Court. *See* United States v. Plattner, *supra*, 330 F.2d at 276.

■ In this case by accepting counsel's assistance during the long pretrial period and by accepting counsel's representation during the early stages of the trial, Grogan clearly manifested an intent to be represented by counsel rather than to proceed entirely *pro se*. When counsel informed the Court that Grogan wished to personally enter objections, the District Court ruled only "at this time that Mr. Grogan will not be permitted to make objections during the course of the direct testimony." The Court made it clear at the time of this ruling that consideration would be given to any further application by Grogan for permission to participate in his own defense, but no such further application was made, nor did Grogan request that his counsel be discharged or that he be permitted to proceed entirely *pro se*. In this regard it is important to note that although Grogan argues that the District Court also denied him the right to personally conduct the cross-examination of witnesses, our examination of the record discloses no instance where Grogan made or the District Court denied any request that he be permitted to personally cross-examine the witnesses against him.

Finally, the record shows that the denial of the request for permission to enter objections to evidence was not made without recognition of Grogan's right and his original desire to conduct his own defense. To the contrary, the record shows that the Court's purpose in making the ruling was to maintain the orderly conduct of the jury trial then in progress, a matter clearly within its discretion. *See, e. g.*, Batsell v. United States, 403 F.2d 395, 401 (8th Cir. 1968), *cert. denied*, 393 U.S. 1094, 89 S.Ct. 865, 21 L.Ed.2d 785 (1969); Sanchez v. United States, 311 F.2d 327, 333 (9th Cir. 1962), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1678, 10 L.Ed.2d 704 (1963); Brasier v. Jeary, 256 F.2d 474, 478 (8th Cir.), *cert. denied*, 358 U.S. 867, 79 S.Ct. 97, 3 L.Ed.2d 99 (1958). In this case five defendants were being jointly tried under a twelve-count indictment involving a rather complicated factual pattern. Each of the five defendants was represented by a separate attorney. Under these circumstances the District Court's concern that granting permission to Grogan or any of the other defendants to personally enter objections to evidence would only serve to confuse an already complicated trial seems well founded.

We therefore conclude in light of all the circumstances including Grogan's acceptance of representation by counsel that the District Court's denial of Grogan's request for permission to personally enter objections to the admissibility of evidence had neither the purpose nor the effect of violating Grogan's constitutional rights in the premises.

## II. APPELLANT PEGRAM'S RIGHT TO SECURE THE ATTENDANCE OF WITNESSES AT THE TRIAL.

The other issue affecting only one of the appellants is whether the District Court committed error in denying appel-

lant Pegram's petition for the issuance of subpoenas and writs of habeas corpus ad testificandum at government expense pursuant to Rule 17(b) of the Federal Rules of Criminal Procedure for five persons, all of whom were incarcerated in either federal or state penal institutions.

In his petition Pegram stated that "these witnesses are necessary to his defense in this case in that their testimony will be used for alibi as well as impeachment purposes" along with an allegation that he was without funds to pay the costs of securing the attendance of the witnesses. The District Court denied the petition for failure to state with sufficient particularity the nature of the testimony sought from the witnesses.

Rule 17(b) of the Federal Rules of Criminal Procedure, 18 U.S.C., authorizes the District Court to order the issuance of subpoenas and secure the attendance of witnesses without cost for defendants who are unable to pay the necessary fees " * * * upon a satisfactory showing * * * that the presence of the witness is necessary to an adequate defense." The inclusion of the requirement of a "satisfactory showing" to the District Court has been held to vest the District Court with a broad discretion in granting or denying petitions under Rule 17(b). See Welsh v. United States, 404 F.2d 414, 417 (5th Cir. 1968); Findley v. United States, 380 F.2d 752, 754 (10th Cir. 1967).

■■ Here it is clear that the District Court committed no abuse of discretion in denying appellant Pegram's application for the subpoenas and the writs. The mere allegation that the witnesses would be necessary for "alibi as well as impeachment purposes" is the most general of statements and does not constitute the sufficient averment of facts to constitute a "substantial showing" that the witnesses would be necessary to the presentation of an adequate defense. See Findley v. United States, supra.

### III. PRETRIAL DISCOVERY MOTIONS.

The first issue which affects each of the appellants concerns the correctness of the District Court's rulings on certain pretrial discovery motions.

The first motion for discovery, filed approximately one month after the arraignment of all the appellants, requested permission to inspect and copy certain records and documents obtained by the government in the investigation of the case. The District Court granted part of the request and denied part, but the appellants have raised no issue on appeal concerning the correctness of the denial of part of the first motion. Our review of the record discloses no error in the Court's ruling on this first motion.

Approximately one month thereafter appellant Condor filed a motion for production of "all evidence of every kind and character which will be favorable to this accused in the trial of this case." Among other things the motion requested all evidence tending to impeach or discredit the testimony of William Kenneth Knight and specifically requested all evidence of any leniency promised to Knight in exchange for his testimony. The motion also requested the government to state where and when Knight could be interviewed by counsel for defendants. The final branch in the motion requested that "the entire file of the government in this case be made available to counsel for this defendant." The Court denied all the requested information except the request for an opportunity to interview codefendant Knight.

Pursuant to the Court's ruling the government made Knight available for an interview by counsel for all of the other defendants. It appears, however, that the attempt to interview Knight was unsuccessful because Knight, upon the advice of his attorney, refused to talk to counsel for the other defendants. After the attempt to interview Knight failed all of the defendants joined in a new motion for discovery, including certain interrogatories directed to the

government. Without enumerating each of the requests for information, it is sufficient to state that the main thrust of the motion again was to obtain all evidence favorable to the defendants and especially evidence which would impeach codefendant Knight.

It is the denial of these latter discovery motions which the appellants claim as error, but for the reasons set forth below we hold that the District Court committed no error in this regard.

■■ First, some of the information sought was clearly not discoverable under the Federal Rules of Criminal Procedure. Rule 16(b) of the Federal Rules of Criminal Procedure, 18 U.S.C., permits a defendant, upon a proper showing of materiality to the preparation of his defense and reasonableness of the request, to inspect and copy books, papers, documents, tangible objects, buildings or places, which are in the possession of the government. By its very terms Rule 16(b) is limited to inspection and copying of tangible objects. Clearly therefore, the interrogatories filed by the defendants here were not an appropriate mode of discovery under Rule 16(b). *See* 1 Wright, Federal Practice and Procedure: Criminal § 254 (1969). Similarly, the names and criminal records of government witnesses are not discoverable under Rule 16(b). *See, e. g.,* Hemphill v. United States, 392 F.2d 45, 48 (8th Cir.), *cert. denied,* 393 U.S. 877 (1968); United States v. Birrell, 276 F.Supp. 798, 826 (S.D.N.Y.1967); United States v. Cobb, 271 F.Supp. 159, 162 (S.D.N.Y.1967); United States v. Margeson, 261 F.Supp. 628, 629 (E.D.Pa.1966).

■ Second, the requirement of Rule 16(b) of a showing of the reasonableness and materiality of the request is not satisfied by a mere conclusory allegation that the requested information is material to the preparation of the defense. United States v. Birrell, *supra,* 276 F.Supp. at 825–826; United States v. Cobb, *supra,* 271 F.Supp. at 161–162; United States v. Soyka, 265 F.Supp. 126, 129 (S.D.N.Y.1967), *reversed on other grounds,* 394 F.2d 443 (2d Cir. 1968). Here, except for the request to examine any statement given the government by codefendant Knight, the appellants offered nothing to the District Court other than the bare allegation that the requested information would be material to the preparation of the defense. With respect to the appellant's request to examine any statement given to the government by Knight, the appellants showed that they had attempted to interview Knight but that Knight had refused to talk to them. Appellants also showed that they expected Knight to testify for the government at the trial and that they expected Knight's testimony to be an important part of the government's evidence against them at the trial. Appellants alleged that they therefore needed advance knowledge of Knight's testimony in order to prepare their defense. However, appellant's recognition of the fact that Knight was to testify as a government witness was alone sufficient grounds for the District Court to deny discovery of his statements since Rule 16(b) specifically exempts from pretrial discovery the statements of government witnesses. And since the appellants made no showing of the reasonableness or materiality of the other requests, the District Court committed no abuse of discretion in denying them.

■ Finally, it should be noted that while Rule 16(f) requires all motions for discovery to be made within 10 days after arraignment and further provides that the motion shall contain all the relief sought and that subsequent motions will be permitted only upon a showing of cause why such motion is in the interest of justice, none of the motions here were filed within 10 days of the arraignment nor was there any attempt to show why the subsequent motions were in the interest of justice. The failure to comply with the requirements of Rule 16(f) alone might not always be determinative of a defendant's right to discovery, but the appellants' utter failure to comply with the time requirements of the Rule here would justify the District Court's

denial of the motions as a proper exercise of discretion.

Appellants also contend that an additional burden of disclosure of all evidence favorable to them was placed on the government by the Constitutional requirement of due process, as enunciated by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), but our reading of that case discloses no such additional burden. *Brady* holds only that the suppression at trial of evidence favorable to an accused is a denial of due process. This is a far cry from requiring the government to determine prior to trial what evidence in its files will be favorable to the accused, a crystal-ball type decison which might often be impossible without advance knowledge of the nature of the defense which will be presented at trial. *See* United States v. Cobb, *supra*, 271 F.Supp. at 163. We are therefore of the view that the disclosure required by Rule 16 is much broader than that required by the due process standards of *Brady*. *See* 1 Wright, Federal Practice and Procedure: Criminal § 254 (1969). Since we have already determined that the denial of the discovery motions was not an abuse of discretion granted to the District Court under Rule 16, and since the appellants have not offered the slightest hint that the government actually suppressed any exculpatory evidence at the trial, we hold that the denial of the broad discovery motions for all evidence favorable to the appellants was not a denial of due process. *See* Hemphill v. United States, *supra*, 392 F.2d at 48.

## IV. THE JENCKS ACT STATEMENTS.

This issue is related to the prior issue in that it concerns another facet of the appellants' attempt to discover codefendant Knight's pretrial statements in order to discredit his testimony at trial.

Prior to the trial codefendant Knight gave government agents several statements which, for purposes of this appeal, will be assumed to be subject to the Jencks Act (18 U.S.C. § 3500). Following Knight's direct testimony at trial as a government witness, the appellants made a timely motion to examine all of his pretrial statements. The government objected to disclosure of all of the statements, claiming that the statements contained much matter which was unrelated to Knight's direct testimony at trial. Therefore the District Court, pursuant to subsection (c) of the Jencks Act, conducted an in camera inspection of the statements and excised those parts of the statements which it considered to be unrelated to the witness' direct testimony. Those parts of the statements which the Court found to be relevant to the witness' direct testimony were submitted to the appellants for impeachment purposes in their cross-examination of Knight, and those parts of the statements which were not given to the appellants were preserved for review by this Court in accordance with the provisons of subsection (c) of the Act. We have examined all of Knight's pretrial statements and have compared them with his direct testimony at trial. Our examination shows that all of the matter excised by the District Court was unrelated to Knight's testimony at trial and we therefore hold that there was no error in the District Court's determinations in this regard.

## V. CROSS-EXAMINATION ISSUES.

These issues are related to the prior issues since they too involve appellants' efforts to impeach codefendant Knight's trial testimony. The first is whether the District Court erred in refusing to permit appellants to cross-examine Knight about specific crimes, other than the crimes involved in this trial, for which he had been indicted but to which he had neither pled guilty nor been convicted. The District Court ruled that such cross-examination for impeachment purposes had to be limited to questions about convictions for felonies or misdemeanors involving moral turpitude or such crimes to which he had pled guilty. This ruling was clearly correct. *See,*

*e. g.*, Michelson v. United States, 335 U.S. 469, 482, 69 S.Ct. 213, 93 L.Ed. 168 (1948); United States v. Benson, 369 F.2d 569, 572 (6th Cir. 1966); Henderson v. United States, 202 F.2d 400, 406 (6th Cir. 1953).

■■■■ The second cross-examination issue is whether the District Court improperly refused to permit the appellants to question Knight during cross-examination about his place of residence. One of the questions asked of Knight during cross-examination was his place of residence. Upon an objection by the government the District Court ruled that since Knight was in protective custody of a United States Marshal for the duration of the trial, he would be required to divulge only the state of which he was a resident. Appellants contend that this ruling was error because it precluded them from laying a proper foundation for impeaching Knight through the use of character witnesses who could testify as to his reputation for truth and veracity in the general locality of his residence. This contention is completely without merit. It is true that a witness' place of residence is a proper subject for cross-examination as a foundation for later impeachment through the use of character witnesses. *See* Smith v. Illinois, 390 U.S. 129, 88 S.Ct. 748, 19 L. Ed.2d 956 (1967); Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). However, our examination of the record discloses no denial of the right to cross-examine on that subject. Despite the District Court's ruling that he had to divulge only the state in which he resided, Knight subsequently testified that he had been incarcerated in Tampa, Florida, until approximately one month prior to the trial and that for the one month period between his release from custody and the beginning of the trial he had worked and lived in Tampa, Florida. This information alone, without exact street address, was a sufficient disclosure of Knight's place of residence in light of his protective custody during the trial and the possibility of reprisals against him because of his testimony for the government. *See* Capriola v. United States, 61 F.2d 5, 10 (7th Cir. 1932).

■■■■ Even assuming that the District Court's ruling had the effect of preventing appellants from laying a proper foundation for the impeachment of Knight through the use of character witnesses, the appellants were not prejudiced thereby. Knight's testimony, both on direct and cross-examination, disclosed that he had ten felony convictions, that he was a former narcotics addict, that he had committed perjury while testifying for the state in a state criminal proceeding in Alabama, and that he was free on a recognizance bond pending sentencing on his guilty plea to the charges in this case. Further impeachment of his credibility through the use of character witnesses would at best have been superfluous. In any event this was not a case in which the trial court had cut off all inquiry into the witness' background, thereby denying the defendants "the opportunity to place the witness in his proper setting and to put the weight of his testimony and his credibility to a test" (Alford v. United States, *supra*, 282 U.S. at 692, 51 S.Ct. at 219). We therefore find no abuse of discretion or prejudicial error in the Court's ruling.

## VI. PRETRIAL PUBLICITY.

■■■■ The final issue is whether the District Court erred in refusing to grant the appellants' motion for a continuance or a mistrial because of alleged prejudicial publicity about the case. When the indictments were obtained in this case in the fall of 1967, local newspapers quoted the United States Attorney as having stated that the case was part of a "colossal criminal enterprise" and that it was "the first several corresponding trials to be held in various sections of the nation." The record does not indicate whether the United States Attorney actually made the statements attributed to him, but it does show that immediately prior to the trial and during the early stages of the trial in June of 1968 the local newspapers repeated the above quoted pas-

sages in stories concerning the trial. The record also shows, however, that the newspaper articles dealing with the trial consisted of only four or five short paragraphs, once accompanied by photographs of the defendants, and that, with one exception the articles were located in the back pages of the newspapers. The news articles were thus a small and inconspicuous part of the general body of news of which they were a part. Furthermore, the insignificant character of the news articles must be contrasted with the fact that each of the jurors selected in this case stated during voir dire examination that he had neither seen nor read anything about the case and the fact that the District Court carefully instructed the jurors not to read or listen to any news accounts of the trial during the course of the trial. Under these circumstances the District Court committed no error in denying the motions for a continuance or a mistrial. *See* United States v. Acuff, 410 F.2d 463, 465 (6th Cir. 1969); United States v. Medlin, 353 F.2d 789, 792 (6th Cir.), *cert. denied,* 384 U.S. 973, 86 S.Ct. 1860, 16 L.Ed.2d 683 (1965); United States v. Hoffa, 349 F.2d 20, 39 (6th Cir. 1965), *aff'd.* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

Affirmed.