ROGER DEAN MOSBY v. STATE OF ARKANSAS

5493                                    457 S. W. 2d 836

Opinion delivered September 21, 1970

18

*John W. Cole,* for appellant.

*Joe Purcell,* Attorney General; *Mike Wilson,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. Appellant and a co-defendant were charged by information with first degree murder while in perpetration of robbery. The two were tried jointly before a jury, convicted and sentenced to death. We reversed those convictions because of an erroneously given instruction and also erroneously admitted cross-implicating confessions. *Mosby and Williamson* v. *State,* 246 Ark. 963, 440 S. W. 2d 230. On remand, the trial court ordered a severance and upon a retrial, appellant was again convicted by a jury and sentenced to death. From that judgment the appellant, by his court appointed trial counsel, brings this appeal.

We first consider appellant's assertion that numerous irregularities occurred during the preparation of the jury lists from which the jury that condemned him to death was ultimately selected. Prior to trial, a motion to quash the jury panel was filed. A hearing was held on this motion at which time it was established that one of the three jury commissioners absented himself before the completion of a master list. The two remaining commissioners completed the task of compiling this master list. These two commissioners then selected therefrom the regular and alternate grand and petit juror panels which they sealed in an envelope, endorsed and delivered to the court clerk. The absent commissioner appeared in the clerk's office the following day and signed the endorsed envelope without having knowledge of the composition of the various lists which it contained. Numerous other statutory deviations (which are not necessary to consider since they are unlikely to re-occur in the selection of other jury panels) were also asserted at this hearing. The trial court denied appellant's motion to quash the panel.

The statutory provisions in effect when these jury panels were selected specified that the circuit court shall select three jury commissioners and charge them upon oath to faithfully discharge their duties as commissioners. Ark. Stat. Ann. § 39-201 (Repl. 1962). The legislative attitude as to the strict performance of these duties is emphasized by a subsequent section which prescribes a penalty to be imposed upon any commissioner whc fails to attend and perform the duties required of him. Section 39-204. Similarly, other provisions demonstrate the seriousness of this matter. The selection of the grand and petit jury lists by only two commissioners constituted a substantial departure from the plain statutory mandate and, therefore, furnished a sufficient basis, as comprehended by Ark. Stat. Ann. § 43-1911 (Repl. 1964), for appellant to challenge the jury panel. See *Keese* v. *State*, 223 Ark. 261, 265 S. W. 2d 542 (1954); *Rutledge* v. *State*, 222 Ark. 504, 262 S. W. 2d 650 (1953); *Shockley* v. *State*, 199 Ark. 159, 133 S. W. 2d 630 (1939); *Wiley* v. *State*, 191 Ark. 274, 86 S. W. 2d 13 (1935).

However, irregularities affecting the selection of the jury panel warrant a new trial only if timely objection was made prior to the verdict and if resulting prejudice is shown. *Underdown* v. *State*, 220 Ark. 834, 250 S. W. 2d 131 (1952). Furthermore, an appellant is in no position to assert that he was prejudiced by such irregularities unless he has exhausted his peremptory challenges. *Keese* v. *State, supra; Rutledge* v. *State, supra; Wiley* v. *State, supra*. In the instant case, appellant registered a timely objection and exhausted his peremptory challenges. The state contends that the appellant has, nonetheless, failed to demonstrate any resulting prejudice since "the record utterly fails to show that the * * * commissioners chose anyone but honest, upright and fair persons as members of the panel * * *." In *Underdown* v. *State, supra*, it was noted that:

"* * * there is no contention that an incompetent, disqualified or partial juror was forced on the defendant. No substantial rights of the defendant

> appear to have been in any manner affected by the alleged irregularity. It is well settled by statute and our decisions that we do not reverse a judgment for harmless and non-prejudicial error."

The irregularity complained of in that case was the failure of the jury commissioners to certify the lists as required by § 39-208. When the omission was discovered, the trial court immediately took extensive measures to cure the irregularity and to effectively protect Underdown against any possibility of resulting prejudice.

In the case at bar it has already been determined that a substantial irregularity existed in the manner of the selection of the jury panel from which was selected a jury that assessed a death sentence. Other jurisdictions have held that any substantial deviation from the statutorily prescribed procedure constitutes prejudicial error per se. See *Tarrance* v. *Commonwealth,* 265 S. W. 2d 40 (Ky. 1953); *State* v. *Dobbs,* 244 P. 2d 280 (Wyo. 1952); *People* v. *Mack,* 367 Ill. 481, 11 N. E. 2d 965 (1937). This attitude was aptly stated in *Tuley* v. *State,* 204 S. W. 2d 611 (Texas Crim. App. 1947), wherein it was said:

> "The statute law of this state provides for the mode, manner and method by which a venire is to be drawn from which a jury is to be selected to try one accused of a capital offense. A denial of the rights extended by such statutes constitutes prejudicial error. This is fundamental and basic.
>
> Having reached the conclusion that appellant was not furnished a venire drawn in accordance with the mandate of the statutes, the question of harmless error is not presented."

The jury system is historically the most efficient means devised by man in his constant search to achieve fairness and justice. Our legislature has sought to safeguard against any imperfections. In the case at bar, we

must hold that the selection of the jury panel by only two commissioners, upon objection by appellant and subsequent exhaustion of his peremptory challenges, was not in accordance with the clear legislative mandate and constituted prejudicial error.

The appellant also contends for reversal that the court erred by making the following comment to the prospective jurors during voir dire:

> "There have been numerous questions propounded to the jury. The court will, at the conclusion of the case, instruct the jury as to the law of the case. One of the instructions will be concerning the situation that the defendant did testify and in the event he didn't testify concerning that situation."

This case was previously reversed because an instruction was given, over objection by appellant, concerning his failure to testify. *Mosby and Williamson* v. *State, supra.* See, also, *Criminal Procedure—Jury Instruction on the Failure of an Accused to Testify,* 24 Ark. L. Rev. 127 (1970). That decision contained the following language from *Russell* v. *State,* 240 Ark. 97, 398 S. W. 2d 213 (1966):

> "If the accused is to have the unfettered right to testify or not to testify he should have a correlative right to say whether or not his silence should be singled out for the jury's attention."

Based upon the record before us, we cannot say whether the remarks of the court upon voir dire were invited or not. So, in that state of the record, the fact that the trial court brought appellant's silence or non-silence as a witness to the jury's attention during voir dire rather than during final instructions is of no consequence. The appellant's "correlative right to say whether or not his silence should be singled out" was infringed upon just the same. The prerogative of so alerting the jury was exclusively within the option of the appellant.

Nor is there merit in the state's position that any error was "waived by the request for that instruction." A waiver results from an election between two or more alternatives. Such an election necessarily implies free-

dom of choice. Here, however, the voir dire comment impinged upon his choice and thereby denied him the unfettered correlative right to freely determine whether such an instruction 'should be given. In the circumstances, a waiver cannot be said to have resulted. The present situation is analogous to the recent case of *Farmers Co-Op Ass'n. Inc.* v. *Garrison,* 248 Ark. 948, 454 S. W. 2d 644, wherein we held that a party should not be confronted with the dilemma of seeking favorable instructions at the cost of waiving his objection to an error when that error was the very cause compelling that party to request such an instruction.

Finally, we deem it necessary to discuss the appellant's contention that the court erred in refusing to permit him to make a portion of his closing argument to the jury. At common law, the accused, at least in capital cases, was entitled to make an unsworn statement to the jury at the close of the case. This privilege was afforded to him because, not being considered a competent witness for his own defense, he could not testify in his own behalf and, furthermore, he was often made to stand trial without benefit of counsel. However, the practice of allowing the accused to so address the jury was nonetheless maintained to some extent after the passage of the Prisoner's Counsel Act in 1837 which conferred the right to counsel on those accused of crime and the passage of the Imperial Criminal Evidence Act in 1898 which made defendants competent witnesses in their own behalf. See Annot., 17 A. L. R. 253 (1922) and 77 A. L. R. 2d 1233 (1961). Subsequent cases in this country concerning a defendant's right to make an unsworn statement to the jury have varied both in rationale and result. The Constitution of the State of Arkansas, Article 2, Section 10, provides that one accused of crime "* * * shall enjoy the right to be heard by himself and counsel." In *Williams* v. *State* (omitted from Vol. 54 of Ark. Reports), 16 S. W. 816 (1891), this court inferentially indicated that a defendant represented by counsel also has the right to be heard in person, provided he exercises that right at the proper time. This case was decided subsequent to the enactment of Ark. Stat. Ann.

§ 43-2016 (Repl. 1964) which provides that an accused shall be a competent witness in his own behalf; and, therefore, the state constitutional right to be heard in person is independent of the right to testify in one's own behalf.

Here, after appellant's court-appointed counsel had made the initial portion of the closing argument, he requested that appellant be permitted to make the final portion personally. This was the first time the court was apprised of this desired procedure. The court refused appellant's request, stating as the reason for its ruling: "Because he didn't testify." This basis is not supported by either the common law or case authority in this country. An unsworn statement before the jury remains just that regardless of whether or not the defendant has previously testified and been subjected to cross-examination. This is clarified as well as emphasized by the fact that a defendant who chooses to proceed pro se may make a closing argument without first being required to testify.

In the case at bar, however, we are not of the opinion that prejudicial error was necessarily committed in this regard. After a careful study of the pertinent case law of other jurisdictions, we are disposed to subscribe to the rationale of the Supreme Court of Missouri. Section 18(a), Article I, of the Constitution of Missouri, V.A.M.S., provides that in criminal prosecutions "the accused shall have the right to appear and defend, in person and by counsel; * * *." In *State* v. *Velanti*, 331 S. W. 2d 542 (Mo. 1960), that constitutional provision was interpreted as follows:

> "If defendant had insisted upon personally conducting his defense, without being represented by an attorney, he would have had the right (absent certain exceptions) to have done so. See *State* v. *Warren*, Mo. Sup., 321 S. W. 2d 705, and Supreme Court Rule 29.01, 42 V.A.M.S. However, since he accepted the services of a court-appointed attorney and permitted him to conduct his defense, defend-

ant had no absolute right to personally address the jury and thus supplement the argument of his counsel. Whether defendant would be permitted to so participate in the trial was a matter within the sound discretion of the trial court." [citing cases]

Likewise, we think that this matter is best resolved by the sound discretion of the trial court in order that it may maintain order, prevent unnecessary consumption of time or other undue delay, and preserve its dignity and decorum. See *United States* v. *Foster,* 9 F. R. D. 367 (D. C. S. D. N. Y. 1949).

We deem it unnecessary to discuss other contentions for reversal by appellant since these asserted errors are not likely to occur upon a retrial.

Reversed and remanded.

BYRD, J., disqualified and not participating.