Argued May 23, affirmed June 18, petition for rehearing denied
July 11, petition for review denied September 5, 1973

STATE OF OREGON, *Respondent, v.*
DENNIS WHITLOW (No. C-72-09-2958),
*Appellant.*

510 P2d 1354

608

J. *Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

LANGTRY, J.

Defendant appeals from conviction in a jury trial of burglary in the second degree. ORS 164.215. He contends (1) that the trial court erred in requiring him after he commenced conducting his own defense to proceed therewith; (2) that the court erroneously remarked that it costs the state $500 a day to operate the courtroom as it admonished him to stay with ger-

mane subjects as he conducted voir dire examination of the jury; and (3) that the court should not have allowed evidence that defendant refused to give his name at the time of his arrest.

(1). Defendant had his second court-appointed counsel at the time trial commenced. He asked the court at that point to rule that he could personally make a closing statement to the jury. The court informed him that he had the right to conduct his own defense but that he would have to conduct the whole defense himself if he so chose, but could consult with counsel who would remain at counsel table with him. The court tried to dissuade defendant from conducting his own case. The defendant then chose to conduct his own defense and proceeded with a lengthy and rambling voir dire examination of the prospective jurors, much of which was far afield from germane subjects. Many of his questions were pointless and abstract, others were incomprehensible. The court, in trying to keep defendant from consuming unnecessary time, made the remark that it costs $500 a day to operate the courtroom, "* * * It is costing all these people that money * * *." No objection was made to the court's statement at that time, but at the end of trial, more than 400 pages of the transcript later, defendant moved for a mistrial on the ground that the remark prejudiced him.

■ Defense counsel remained with defendant throughout the trial. When defendant had finished his selection of the jury, he asked the court to allow defense counsel to proceed with the case. This the court refused to do, reminding defendant of the choice he had made after the court had warned him of the rules of procedure it had set. Defendant then conducted cross-

examination of the state's witnesses and the alibi witness which he presented for the defense. He did not take the witness stand. A reading of the lengthy record indicates that his counsel was framing for him virtually all the questions he asked. Legal arguments throughout the case were made by defendant's counsel, who also spontaneously made objections to prosecution questions. Defendant made his own closing statement. In that statement he said: "\* \* \* But I am saying that I did not commit a burglary nor did I know of a burglary." He had already made it clear to the court that his purpose was to make such a denial without being under oath and subject to cross-examination, penalties for possible false swearing, or revelation of his former criminal record for its value to the jury in judging his credibility. Thus, he accomplished his purpose.

> "In all criminal prosecutions, the accused shall have the right \* \* \* to be heard by himself and counsel \* \* \*." Oregon Constitution, Art I, § 11; *State v. Butchek,* 121 Or 141, 153, 253 P 367, 254 P 805 (1927); *State v. Dalebout,* 4 Or App 601, 480 P2d 451 (1971).

*See, State v. Verna,* 9 Or App 620, 498 P2d 793 (1972). The fact that the Oregon constitutional provision uses the conjunctive between "defendant" and "counsel," as do similar provisions in most state constitutions, has repeatedly been held not to mean defendant may intermittently use and then discard counsel. *See People v. Hill,* 70 Cal 2d 678, 76 Cal Rptr 225, 452 P2d 329 (1969), *cert denied* 406 US 971 (1972), and *People v. Mattson,* 51 Cal 2d 777, 336 P2d 937 (1959). Numerous cases including those cited above hold that whether the court allows defendant to make a closing statement or, indeed, whether he shall

be allowed to intermittently use counsel during the trial while he conducts his own defense is within the sound discretion of the trial court. *See Mosby v. State,* 249 Ark 17, 457 SW2d 836 (1970); *People v. Bright,* 78 Ill App 2d 2, 223 NE2d 215 (1966); *State v. Brewer,* 73 Wash 2d 58, 436 P2d 473, *cert denied* 393 US 970 (1968); and Annotation, 77 ALR2d 1233, 1241, 1246 (1961) and ALR2d Later Case Service. The rule is succinctly stated in *Mosby v. State,* supra:

> "* * * [W]e think that this matter is best resolved by the sound discretion of the trial court in order that it may maintain order, prevent unnecessary consumption of time or other undue delay, and preserve its dignity and decorum * * *." 249 Ark at 24.

The trial judge is peculiarly well situated to exercise such sound discretion. Besides being able to appraise whether a defendant seeks to use such tactics as a way to avoid taking the oath, possible penalties for perjury and statutory methods provided for attacking credibility, the trial judge is likely to know whether the word is circulating among defendants waiting trial that this is a method for disrupting court proceedings and frustrating the efforts of courts to ascertain the truth. What the trial judge did in the case at bar could have been calculated to thwart such tactics.

■ Our review of the record indicates that the trial judge acted well within the bounds of his discretion. Perhaps if a defense were substantially impaired, the court should relinquish some of the rigor of its ruling. In this case the court did just that, for it afforded the defendant virtually all of the advantages of having legal counsel in spite of the ruling about which the defendant complains. The defendant had a fair trial.

■ (2). The remark which the trial judge made concerning the costs of operating the courtroom was not objected to at or even near the time it was made. When, at the end of the case, defendant made his motion for a mistrial based upon the remark, the trial judge answered by saying that if the objection had been made at the proper time the court would have been able either to have corrected any bad impression with reference to defendant that was made to the jury or to have granted a mistrial. But at that late stage of the case the court thought it would do the defendant more harm than good to mention the subject and he did not feel a mistrial was justified. This, again, is a matter in which the trial judge may exercise sound discretion. We think it was properly exercised in this case.

■ (3). One of the arresting officers testified that the defendant was apprehended after a foot chase near the time and place of the burglary. He was asked his name but remained silent. This was testified to by the police officer over a *Miranda*[1] objection. The officer also testified that defendant was placed in a police car; and very soon thereafter, while the investigation of the burglary was proceeding, defendant broke away from the police car and attempted to escape. He was immediately apprehended. The state's theory is that the refusal to disclose his name was a calculated prelude to his contemplated attempt at escape and that the whole matter together was evidence of a consciousness of guilt with reference to the burglary, and thus admissible in evidence. The threads of such a theory may justifiably lead to the conclusion for which the state argues, but we see no need of it here. McCormick,

---

[1] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

Evidence 327, 329, § 152 (hornbrook series 2 ed 1972), states:

> "A statement obtained without giving the *Miranda* warnings and according the defendant the prescribed rights is inadmissible only if it is the result of 'questioning' or 'interrogation.' * * * Where the police action is merely routine gathering of information to be used for standard administrative purposes, the warnings have not been required because the police action was neither intended nor reasonably likely to elicit incriminating information * * *." (Footnote citing authorities omitted.)

We characterize the question the officer asked as being for a "standard administrative purpose" because the defendant was under arrest and was going to be booked when he was taken to the police station. The first question in booking would be to learn defendant's name. It was not interrogation in the sense the defendant would have us attribute to it.

Affirmed.