STATE of Tennessee, Petitioner,

v.

William Lee BURKHART, Respondent.

Supreme Court of Tennessee.

June 28, 1976.

R. A. Ashley, Jr., Atty. Gen., Michael E. Terry, Asst. Atty. Gen., Nashville, Ronald Webster, Dist. Atty. Gen., Ralph E. Harwell, Herbert S. Moncier, Asst. Attys. Gen., Knoxville, for petitioner.

Wade M. Boswell, Knoxville, Philip L. Whitson, Strawberry Plains, for respondent.

## OPINION

HENRY, Justice.

We granted certiorari in this criminal action in order to examine the constitutional right of a criminal defendant, who is represented by counsel, to cross-examine witnesses and to argue his own case.[1]

The Court of Criminal Appeals reversed defendant's conviction for first degree burglary, and awarded a new trial, upon the authority of *Wilson v. State*, 50 Tenn. 232 (1871) and *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

### I.

A proper construction of the Federal and State constitutional provisions is dependent upon an understanding of the historical background of the rules relating to the testimony of a criminal defendant and his right to counsel. We summarize the historical data contained in *Ferguson v. Georgia*, 365 U.S. 570, 81 S.Ct. 756, 5 L.Ed.2d 783 (1961).

For centuries, parties to civil and criminal actions were disqualified as witnesses. In sixteenth century England, a criminal defendant could not testify, nor call witnesses in his own behalf nor be represented by counsel. Quoting from 1 Stephen, History of the Criminal Law of England, p. 326, the Court, in *Ferguson*, noted that the criminal trial of that period has been described as:

> [A] long argument between the prisoner and the counsel for the Crown, in which they questioned each other and grappled with each other's arguments with the utmost eagerness and closeness of reasoning. 365 U.S. at 574, 81 S.Ct. at 759.

By the seventeenth century he was allowed to call witnesses, but still could not testify in his own behalf.

Disqualification for interest was in vogue when this nation was formed. Neither in England nor in this country could criminal defendants testify in their own behalf. With the advent of the nineteenth century this disqualification came under attack. This was long after the adoption of the Constitution of the United States in 1788 and of Tennessee in 1796.

In 1859 Maine became the first state to permit criminal defendants to testify—and this only on a limited basis. In 1864 Maine adopted a general competency statute for criminal defendants, "the first such statute in the English-speaking world." 365 U.S. at p. 577, 81 S.Ct. at p. 760. By the end of the nineteenth century every state of the American Union had adopted such a statute except Georgia, and this was corrected by the decision in *Ferguson, supra.*

By Chapter 79 of the Public Acts of 1887 the Tennessee General Assembly declared:

> In the trial of all indictments, presentments, and other criminal proceedings, the party defendant thereto may, at his own request, but not otherwise, be a competent witness to testify therein. (Sec. 40–2402, T.C.A.).

Prior thereto, in order to achieve a measure of justice by appeasing the rigor of this common law rule, there came into being the practice of permitting the use of unsworn statements. As a part of the common law, or by statutory sanction in some states, this practice was followed; however, it was generally recognized to be "simply a stopgap solution for the serious difficulties for the accused created by the incompetency rule." 365 U.S. at 585–86, 81 S.Ct. at 765.

In *Ferguson, supra*, the Court commented on this rule as follows:

> "The custom grew up in England out of a spirit of fairness to give an accused, who was otherwise disqualified, an opportuni-

---

1. In advance of trial, this indigent defendant, through his court appointed counsel filed a written motion for leave (1) "to cross-examine witnesses at his trial" and (2) "to make a statement to the jury, without being required to take the witness stand to testify at the trial."

The trial judge denied the motion. It was renewed in open court on the day of the trial and again denied. On motion for a new trial, counsel treated the second portion of the motion as being for leave to "make final argument on his own behalf."

ty to tell his story in exculpation." *State v. Louviere*, 169 La. 109, 119, 124 So. 188, 192. The abolition of the incompetency rule was therefore held in many jurisdictions also to abolish the unsworn-statement practice. "In such cases the unsworn statement of an accused becomes secondary to his right of testifying under oath and cannot be received." *State v. Louviere, supra*, 196 La., at 119, 124 So., at 192. "The privilege was granted to prisoners because they were debarred from giving evidence on oath, and for that reason alone. When the law was changed and the right accorded to them to tell their story on oath as any other witness the reason for making an unsworn statement was removed." *Rex v. Krafchenko*, [1914] 17 D.L.R. 244, 250 (Man.K.B.). 365 U.S. at 586, 81 S.Ct. at 765.

Along with the competency statutes and the unsworn statement practice, there must be considered briefly the evolution of the right-to-counsel requirement. For the history of this phase of the historical background we turn to *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

This right has existed throughout our existence as a nation, but it represents a deviation from the early common law. As observed by the Court in *Faretta*, "[a]t one time, every litigant was required to 'appear before the court in his own person and conduct his own cause in his own words.'" 422 U.S. at 823, 95 S.Ct. at 2535, 45 L.Ed.2d at 575, quoting from 1 Pollock & Maitland, History of English Law (1909) n. 16, at 211.

In civil and misdemeanor cases there was a right to counsel but accused felons and traitors were "on their own." Due process rights were unknown. Gradually, and by 1836, in England the ban on counsel in felony cases had been lifted. But, at no point during this evolution was counsel ever forced upon the defendant against his will. It is interesting to note that, according to *Faretta*, the only tribunal that ever adopted a practice of forcing counsel upon an unwilling defendant was the Court of the Star Chamber, in the late sixteenth and early seventeenth centuries.

It is a fact of history that in Colonial America lawyers were somewhat less than popular. Lawyers were not banned from appearing in behalf of clients, but in several colonies, Massachusetts, Virginia, Connecticut and the Carolinas, they were prevented from charging for their services.

The basic right of self-representation was thus thrust upon early colonials and it is a part of our heritage.

The right of self-representation was guaranteed in many colonial charters and declarations of rights. These early documents establish that the "right to counsel" meant to the colonists a right to choose between pleading through a lawyer and representing oneself. After the Declaration of Independence, the right of self-representation, along with other rights basic to the making of a defense, entered the new state constitutions in wholesale fashion. The right to counsel was clearly thought to supplement the primary right of the accused to defend himself, utilizing his personal rights to notice, confrontation and compulsory process. And when the Colonies or newly independent States provided by statute rather than by constitution for court appointment of counsel in criminal cases, they also meticulously preserved the right of the accused to defend himself personally. 422 U.S. at 828, 95 S.Ct. at 2537, 45 L.Ed. at 578–79.

All of this is the background against which the Sixth Amendment right to counsel, the provisions of Tennessee's Constitution, and state and federal cases must be considered.

## II.

We now focus upon the requirements of the Federal Constitution as interpreted by the Supreme Court of the United States.

■ The Sixth Amendment to the Constitution of the United States enumerates the essential rights of an accused in criminal prosecutions. Among other things, it

guarantees that every criminal defendant "have the Assistance of Counsel for his defense." This basic right is a part of the "due process of law" that is guaranteed by the Fourteenth Amendment.

The Sixth Amendment guaranty of the effective assistance of counsel has been recognized and amplified by the courts of Tennessee. See *McKeldin v. State*, 516 S.W.2d 82, 86 (Tenn.1974), wherein we recognized that the Constitution mandates effective assistance and "requires the guiding hand of counsel at every step in the proceedings". See also *Baxter v. Rose*, 523 S.W.2d 930 (Tenn.1975), wherein we strengthened standards of competence of counsel.

Both state and federal decisional law are crystal clear on the constitutional mandate for the effective assistance of counsel. However, neither the Supreme Court of the United States nor this Court has resolved the issue presented in this controversy, viz., the right of a criminal defendant to be represented by counsel *and* simultaneously, and in the same trial, to cross-examine witnesses, make an unsworn statement or present argument in his own behalf, or otherwise participate along with his counsel.

The United States Court of Appeals for the Sixth Circuit, in *United States v. Conder*, 423 F.2d 904 (1970), has spoken to the matter with great clarity:

> While not as often the subject of litigation, the right of a defendant in a criminal case to defend *pro se* is as clearly established as a criminal defendant's right to counsel. (citing cases) The right to defend *pro se* and the right to counsel have been aptly described as "two faces of the same coin," *United States v. Plattner*, 330 F.2d 271, 276 (2d Cir. 1964), in that the waiver of one right constitutes a correlative assertion of the other. While it may be within the discretion of a District Court to permit both a criminal defendant and his attorney to conduct different phases of the defense in a criminal trial, see *United States v. Burkeen, supra* [355 F.2d 241, 245 (6 Cir. 1966)] for purposes of determining whether there has been a deprivation of constitutional

rights a criminal defendant cannot logically waive or assert both rights. The defendant must make a choice, and he should not be permitted to manipulate his choice so that he can claim reversible error on appeal no matter which alternative he apparently chose in the District Court. 423 F.2d at 907–08.

In reversing the trial judge in the instant case, the Court of Criminal Appeals relied, in part, on *Faretta v. California, supra.* The whole thrust of *Faretta* is that a defendant in a state criminal trial has a constitutional right to proceed *without* counsel when he voluntarily and intelligently elects to do so. *Faretta* does not touch upon the basic issue involved in this controversy and, therefore, affords no authority for the claimed right of a criminal defendant to have the benefit of counsel and *simultaneously* to represent himself.

■ *Faretta* puts it beyond question that a criminal defendant has a constitutional right, knowingly and intelligently, to forego his right to counsel and to represent himself, provided he is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing' . . ." 422 U.S. at 835, 95 S.Ct. at 2541, 45 L.Ed.2d at 582. It also stands unequivocally for the proposition that he may not be required to accept the services of court-appointed counsel.

The rules that emerge from these cases are (1) that a criminal defendant has a right to the effective assistance of counsel; (2) that he has a constitutional right to represent himself; (3) that he may not be forced to accept the service of counsel, and, by implication, (4) that he must make a choice between self-representation and representation by counsel.

### III.

Article 1, Section 9, of the Constitution of Tennessee, in delineating the rights of the accused in criminal prosecutions, provides, in part, that:

[T]he accused hath the right to be heard by himself *and* his counsel; . . . (Emphasis supplied).

The Constitutions of 1796 and 1834 contain this identical provision. Additionally, this constitutional right has been recognized by our General Assembly. Section 40–2001, T.C.A. provides:

In all criminal prosecutions, the accused is entitled to a speedy trial, and to be heard in person *and* by counsel. (Emphasis supplied).

The opinion of the Court of Criminal Appeals emphasizes the fact that the constitutional provision is couched in the conjunctive. We do not consider this to be of any consequence. It will be borne in mind that the Constitution of 1796 was written at a time when a criminal defendant did not have the right to testify in his own behalf, and when the right to counsel was not firmly entrenched in American jurisprudence. It was the purpose and intent of the framers of our Constitution to recognize and protect these two basic rights, but not to establish their simultaneous enjoyment in a single criminal trial.

The other authority considered by the Court of Criminal Appeals to be controlling is *Wilson v. State*, 50 Tenn. 232 (1871). As is pointed out in Justice Blackmun's dissent in *Faretta, supra,* "until the middle of the 19th century, the defendant in a criminal proceeding in this country was almost always disqualified from testifying as a witness . . . .. Thus, the ability to defend 'in person' was frequently the defendant's only chance to present his side of the case to the judge or jury." 422 U.S. at 850, 95 S.Ct. at 2549, 45 L.Ed.2d at 591. Cited for this proposition is *Wilson v. State*, followed by this comment:

Such Draconian rules of evidence, of course, are now a relic of the past because virtually every State has passed a statute abrogating the common-law rule of disqualification. (citing *Ferguson, supra*). With the abolition of the common-law disqualification, the right to appear "in person" as well as by counsel lost most, if not all, of its original importance.

422 U.S. at 851, 95 S.Ct. at 2549, 45 L.Ed.2d at 591.

Thus, the *Wilson* holding, to the effect that a criminal defendant may make an argument or an explanation of the circumstances proved against him, but can state no facts not already shown to the jury, has been eroded by the adoption of Sec. 20–2002, T.C.A., making a criminal defendant a competent witness in his own behalf. The holding in *Wilson* is no longer valid authority and is therefore not significant in the disposition of this case.

A substantially stronger holding is contained in *Hopkins & Hoopers v. State*, 78 Tenn. 204 (1882), wherein the Court held as follows:

This ordinance [Art. 1, Sec. 9, Const. of Tenn.] was intended to soften the rigor of common law which gave to persons accused of crime the right to appear for themselves, but deprived them of the right to be heard through and represented by counsel learned in the law.

In the practice under our constitutional rule, it is very seldom the accused exercises the right of being heard by himself. He leaves to his counsel the entire management and control of his defense, still, if he were to demand it, the courts would be obliged to allow him to assist in the conduct and argument of his case. 78 Tenn. at 205.

Again, this case was decided in 1882, some five years before the adoption of the statute making a criminal witness a competent witness in his own behalf, and is no longer to be considered authoritative.

After quoting Article 1, Section 9, and emphasizing that it accords to an accused "the right to be heard by himself *and* his counsel", the Court of Criminal Appeals comments:

Our Supreme Court has carefully construed and preserved this unique right, which is not found in the United States Constitution nor in any other to our knowledge, of an accused to act as his own advocate even though represented by counsel.

It is true that the Constitution of the United States does not contain such a clause. However, such clauses are the rule, rather than the exception in other state constitutions. Footnote 10 to the majority opinion in *Faretta*, indicates that twenty-six other states have constitutional provisions granting to the accused the right to be heard or to defend in person *and* by counsel. 422 U.S. at 813, 95 S.Ct. at 2530, 45 L.Ed.2d at 569, Fn. 10. It further lists three states which grant the right to defend in person *or* by counsel and six states providing the accused with the right to defend either by himself, by counsel, or both.

Research indicates that cases construing this clause from other state constitutions consistently hold contrary to the decision of the Court of Criminal Appeals and follow the general rule that the right to dual or hybrid representation is not mandatory, but permissive, and rests within the sound discretion of the trial court. The rule is based upon a compelling policy to retain in the trial judge the power to maintain an orderly administration of justice at the trial level.[2]

The Constitution of the State of Oregon (Article 1, section 11), accords to an accused the right "to be heard by himself and counsel." In *State v. Whitlow*, 13 Or.App. 607, 510 P.2d 1354 (1973), a case wherein the defendant asserted a right to dual representation, the Court said:

> The fact that the Oregon constitutional provision uses the conjunctive between "defendant" and "counsel," as do similar provisions in most state constitutions, has repeatedly been held not to mean defendant may intermittently use and then discard counsel. (Citing cases).

> Numerous cases . . . hold that whether the court allows defendant to make a closing statement or, indeed, whether he shall be allowed to intermittently use counsel during the trial while he conducts his own defense is within the

sound discretion of the trial court. (Citing cases).

\* \* \* \* \* \*

The trial judge is peculiarly well situated to exercise such sound discretion. Besides being able to appraise whether a defendant seeks to use such tactics as a way to avoid taking the oath, possible penalties for perjury and statutory methods provided for attacking credibility, the trial judge is likely to know whether the word is circulating among defendants awaiting court proceedings and frustrating the efforts of courts to ascertain the truth. 510 P.2d at 1356.

The court in *Mosby v. State*, 249 Ark. 17, 457 S.W.2d 836 (1970), interpreting Arkansas Constitution, Art. 2, § 10 ("right to be heard by himself *and* counsel . . ."), also addressed itself to the reasons behind the rule:

> [W]e think that this matter is best resolved by the sound discretion of the trial court in order that it may maintain order, prevent unnecessary consumption of time or other undue delay, and preserve its dignity and decorum. 457 S.W.2d at 840.

And the court in *Moore v. People*, 171 Colo. 338, 467 P.2d 50 (1970), interpreting Colorado Constitution, Art. 2, § 16 ("right to appear and defend in person *and* by counsel . . ."), explained the rule this way:

> The defendant in a criminal trial has a constitutional right to be assisted and represented by counsel. He also has the constitutional right to defend himself providing that the trial judge shall find him competent to conduct his own defense. However, the language of our constitution cannot be interpreted to provide that the defendant can assert his right to be represented by counsel and at the same time actively conduct his own defense. 467 P.2d at 54.

In *People v. Richardson*, 4 N.Y.2d 224, 173 N.Y.S.2d 587, 149 N.E.2d 875, cert. denied, 357 U.S. 943, 78 S.Ct. 1395, 2 L.Ed.2d 1557, the court observed.

---

2. For statement of general rule, see 21 Am. Jur.2d, Criminal Law, § 311; Anno., "Accused —Participating in Defense", 77 A.L.R.2d 1233 (1961), and 5 Wharton's Criminal Law and Procedure (Anderson Ed. 1957, § 2016)

We perceive no ground for complaint that adherence to such a rule may work an injustice upon a defendant or affect him unfairly. In the first place, the defendant is always able to suggest to his lawyer the matters to be discussed or stressed in his closing address to the jury. In the second place, the trial court, as previously observed, is empowered to allow the defendant himself to sum up if, in the exercise of a wise discretion, it deems such action called for. 173 N.Y. S.2d at 590, 149 N.E.2d at 877.

For additional cases espousing the "discretion" rule, see *People v. Mims*, 160 Cal. App.2d 589, 325 P.2d 234 (1958); *Thompson v. State*, 194 So.2d 649 (Fla.App.1967); *People v. Bright*, 78 Ill.App.2d 2, 223 N.E.2d 215 (1966); *McDowell v. State*, 225 Ind. 495, 76 N.E.2d 249 (1947); *State v. Velanti*, 331 S.W.2d 542 (Mo.1960); *State v. Townes*, 522 S.W.2d 22 (Mo.App.1974); *Stiner v. State*, 539 P.2d 750 (Okl.Cr.1975); *Fowler v. State*, 512 P.2d 238 (Okl.Cr.1973).

### IV.

We are persuaded that our constitutional provision was designed to ameliorate the rigorous rules of the common law. At the time of its adoption the framers intended to insure that every accused citizen enjoyed the benefit of counsel *and* a correlative right to be heard in person. At that time these rights were recognized by giving to the defendant the right to make an unsworn statement and to argue his case, and the simultaneous right to be heard by counsel. With the adoption, in 1887, of the statute (40-2402, T.C.A.) making the defendant a competent witness in his own behalf, the rights of criminal defendants were expanded.

In Tennessee today a criminal defendant continues to have essentially the same rights. The only difference is that criminal trial procedure has been refined and in the process the defendant has gained the right to be a sworn witness testifying in his own behalf. Paraphrased, the constitutional proviso might now read:

In all criminal prosecutions the accused has the right to testify as a witness in his own behalf and to be represented by counsel.

■ He does not have a constitutional right under the State or Federal Constitution to participate *in propria persona* in his own defense and simultaneously to be represented by participating counsel.

He may conduct his own defense without benefit of counsel or with an attorney present in the capacity of "elbow counsel."

The choice is his; he represents himself or he is represented—one or the other, but not both.

■ He does not have a constitutional right to make an unsworn statement. Quite aside from the fact that such a statement would be of questionable value, there is for consideration the patent unfairness to the State of permitting a defendant to make an unsworn statement, not subject to cross-examination, and without leave for the State to comment upon his failure to testify in the regular manner. The State too has an interest in a fair trial.

We have discussed these issues in terms of constitutional imperatives and have reached our stated conclusions on a basis of defendant's participation as a matter of *right*, as opposed to a matter of *grace*.

■ It is the foremost responsibility of the trial judge in a criminal action to insure a fair, just and orderly trial. To this end he must have a reasonable amount of judicial discretion. If the interests of justice so require, the trial judge, in exceptional circumstances, may permit the defendant to participate in the trial, to include the cross-examination of witnesses and the argument of his own defense. But this discretion should be exercised sparingly and with caution and only after a judicial determination that the defendant (1) is not seeking to disrupt orderly trial procedure and (2) that the defendant has the intelligence, ability and general competence to participate in his own defense. Unsworn statements will not be permitted under any circumstances. We caution, however, that when a defendant

argues in his own behalf he is limited to fair comment on the evidence and may not use argument as a guise for an unsworn statement.

## V.

We apply these rules to the facts of this particular case.

This defendant had no constitutional right to cross-examine witnesses, make an unsworn statement or to argue in his own behalf.

■ There is nothing in the record to indicate any exceptional circumstances that would justify this defendant's participation. He had the benefit of competent counsel. There is no showing that he had the intelligence, ability or competence to contribute anything of value to his own defense. The record does, inferentially, show his familiarity with criminal procedures gained as a defendant in various other felony trials, but based upon their outcome, there is no suggestion that this experience could qualify as on-the-job training.

The judgment of the trial court is affirmed and that of the Court of Criminal Appeals is

Reversed.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.

## OPINION ON PETITION TO REHEAR

HENRY, Justice.

A petition for rehearing has been filed on behalf of the respondent, William Lee Burkhart. After a complete and careful examination of the record and analysis of the proof presented therein, the Court is of the opinion that the petition is without merit, and is hereby respectfully denied.

COOPER, BROCK, FONES and HARBISON, JJ., concur.