IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 13, 2018

## FREDERICK WENDELL THOMAS v. STATE OF TENNESSEE

Appeal from the Criminal Court for Shelby County
No. 12-00917    J. Robert Carter, Jr., Judge

No. W2017-00917-CCA-R3-PC

The petitioner, Frederick Wendell Thomas, appeals the denial of post-conviction relief from his 2013 Shelby County Criminal Court jury conviction of first degree murder, for which he received a life sentence. In this appeal, the petitioner contends only that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Matthew Charles Gulotta, Memphis, Tennessee (on appeal), and James E. Thomas, Memphis, Tennessee (on appeal and at hearing),[1] for the appellant, Frederick Wendell Thomas.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kirby May, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Shelby County Grand Jury charged the petitioner with one count each of first degree premeditated murder and employing a firearm during the commission of a dangerous felony. Following a jury trial, the petitioner was convicted as charged of first degree murder. The trial court imposed a sentence of life imprisonment and dismissed the firearm charge. This court affirmed the conviction and sentence on direct appeal. *See*

---

[1]     Following the filing of the briefs in this case, this court permitted Mr. Thomas to withdraw and appointed Mr. Gulotta to represent the petitioner.

*State v. Fredrick Thomas*, No. W2013-02762-CCA-R3-CD (Tenn. Crim. App., Jackson, May 6, 2015), *perm. app. denied* (Tenn. Aug. 13, 2015).

> The evidence adduced at the petitioner's trial established the following:
>
> [The petitioner] and the victim had been unhappy in their relationship in the days and weeks leading up to their final argument. On the evening of the victim's death, [the petitioner] and the victim got into an argument. [The petitioner] told the victim that she should call the police and that they were both going to die. The victim hysterically called 911; the operator heard the victim scream and heard the children begging [the petitioner] not to shoot their mother. [The petitioner] took his gun from its holster and repeatedly shot the unarmed victim and then turned the gun on himself. When police arrived, [the petitioner] was holding a weapon. Testing confirmed that this was indeed the gun that murdered the victim. The jury heard the evidence and chose to disregard [the petitioner's] theory that the crime was borne out of passion.

*Id.*, slip op. at 6.

On January 12, 2016, the petitioner filed, pro se, a timely petition for post-conviction relief, alleging, *inter alia*, that he was deprived of the effective assistance of counsel. Following the appointment of counsel and the amendment of the petition, the post-conviction court conducted an evidentiary hearing on February 9, 2017.

At the evidentiary hearing, trial counsel testified that he had been retained to represent the petitioner at trial but that he had been appointed to handle the petitioner's appeal. Trial counsel stated that he had not sought the services of an investigator because the case was "pretty straightforward" in that the petitioner "was alleged to have shot his wife in the presence of his two daughters, and then turned the gun on his head and shot himself." Although trial counsel was unable to show the necessity of an investigator, he did seek and was granted the funds for a neuropsychologist. Trial counsel noticed that, when he spoke to the petitioner, he possessed an "absent glazed stare" and had "very delayed speech," so counsel wanted to determine whether he was competent to stand trial, particularly because "half of [the petitioner's] brain was literally blown off."

Prior to the shooting, the petitioner "had never had any mental health diagnoses" and was only known to consume alcohol and use "recreational marijuana."

The petitioner had also maintained a "good job working with the city" for some time. The neuropsychologist was permitted to testify at trial to the petitioner's suffering from severe depression, but because the expert was unable to find diminished capacity, he was not permitted to testify regarding the petitioner's competency. The expert was actually "shocked" to discover how little the petitioner's gunshot wound to the head had affected his mental capacity.

During the course of his investigation, trial counsel interviewed the petitioner's mother, his brother, and the petitioner's two daughters, who had witnessed the shooting. None of them were able to provide any information that would have supported the theory of diminished capacity. The petitioner was not under the influence of alcohol or drugs at the time of the shooting. Because trial counsel was unable to argue the petitioner's actual innocence, he proceeded under the theory that the defendant had acted in the heat of passion following his discovery of a hotel receipt which indicated that the victim had been having an affair.

Following his appointment to represent the petitioner on his direct appeal and this court's issuance of the opinion affirming the petitioner's conviction and sentence, trial counsel did not seek to withdraw from his representation of the petitioner because he intended to file an application for permission to appeal to the supreme court. Before trial counsel could file the application, he received notice that the petitioner had filed, pro se, an application for permission to appeal; trial counsel testified that the application was "basically an identical version of [trial counsel's] direct appeal."

When trial counsel learned that the petitioner had filed his own application in the supreme court, counsel "prepared a Rule 11 as well as a motion to withdraw." Trial counsel was certain that he had filed both the Rule 11 application and his motion to withdraw within the 60-day time limit, but post-conviction counsel noted that neither document appeared in the record. Trial counsel testified that the supreme court denied the petitioner's Rule 11 application.

With this evidence, the post-conviction court denied relief, finding no clear and convincing evidence that trial counsel had rendered ineffective assistance of counsel. The court found that neither party had introduced into evidence trial counsel's purported motion to withdraw or application for permission to appeal, but the court noted that the supreme court's order denying the Rule 11 also denied the "State's Motion to Strike Pro Se Pleading, describing it as moot." The court then found that the petitioner had failed to prove "that counsel failed to perform any required action," and, referencing the "extraordinary nature" of an appeal to the supreme court, held that the petitioner offered "no proof of errors in need of correction or law that need[ed] to be developed" in support of his claim that counsel was ineffective for failing to pursue a Rule 11 application.

In this appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that trial counsel performed deficiently by failing to file an application for permission to appeal to the supreme court and that, as a result of this failure, he should now be permitted to seek a delayed appeal. The State contends that the court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial

strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Kendrick*, 454 S.W.3d at 457; *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Rule 11 of the Tennessee Rules of Appellate Procedure provides that an application for permission to appeal to the supreme court must be filed "within 60 days after the entry of the judgment of the" intermediate appellate court. Tenn. R. App. P. 11(b). "Appointed counsel shall continue to represent an indigent party throughout the proceedings, including any appeals, until the case has been concluded or counsel has been allowed to withdraw by a court." Tenn. Sup. Ct. R. 13, § 1(e)(5); *see also State v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976) (stating that a criminal defendant does not have the constitutional right to proceed pro se "and simultaneously . . . be represented by participating counsel"). Counsel seeking to withdraw from the representation of an indigent party following an adverse decision in the intermediate appellate court must seek permission by filing a motion with the clerk of the intermediate appellate court no more than 14 days after the entry of the final judgment. Tenn. Sup. Ct. R. 14.

In our view, the record fully supports the denial of relief in this case. Trial counsel testified that he "wasn't planning to withdraw" from his representation of the petitioner and that he "was planning to file a Rule 11" within 60 days of this court's May 6, 2015 opinion affirming the trial court's ruling on direct appeal. Before he could do so, the petitioner filed, pro se, a Rule 11 application on June 8, 2015. According to trial counsel, he then scrambled to file both a motion to withdraw and a Rule 11 application. Neither the petitioner's pro se Rule 11 application nor trial counsel's motion to withdraw or Rule 11 application appear in the record before us, and nothing indicates which Rule 11 application was denied by the supreme court on August 13, 2015. This is of no consequence, however, because it is clear that the supreme court denied the application on its merits, and the petitioner would only be entitled to a delayed appeal if he had been "deprived of the right to *request* an appeal pursuant to Rule 11." Tenn. Sup. Ct. R. 28, § 9(D)(1)(b)(i) (emphasis added). The petitioner requested Rule 11 review, and review was denied. Thus, he was not entitled to a delayed appeal. Moreover, the petitioner has

utterly failed to show what, if any, basis existed to justify a grant of discretionary review, and as such, he has failed to establish prejudice. *See Strickland*, 466 U.S. at 694. Accordingly, we hold the petitioner has failed to prove by clear and convincing evidence any facts that demonstrate that trial counsel's representation was deficient or prejudicial.

The petitioner failed to establish that he was denied the effective assistance of counsel at trial. Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE