# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
May 23, 2001 Session

## STATE OF TENNESSEE v. JACKIE F. CURRY

### Appeal from the Criminal Court for Knox County
### No. 64212    Ray L. Jenkins, Judge

---

### No. E2000-02475-CCA-R3-CD
### August 2, 2001

---

The Defendant, Jackie F. Curry, appeals as of right his conviction for three counts of aggravated rape. The trial court sentenced the Defendant to twenty-two (22) years for each count. The sentences were ordered to run consecutively to each other and consecutively to a prior eight-year sentence for which the Defendant was on probation at the time of this incident. The Defendant raises the following three issues in this appeal: 1) whether the evidence was sufficient to sustain his convictions for aggravated rape; 2) whether the trial court erred in permitting the State to impeach him with two prior convictions for the sale of cocaine; and 3) whether the trial court erred in sentencing the Defendant. The judgment of the trial court is hereby affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Darryl W. Humphrey, Memphis, Tennessee, for the appellant, Jackie F. Curry.

Paul G. Summers, Attorney General & Reporter; Mark A. Fulks, Assistant Attorney General; Randall E. Nichols, District Attorney General; Robert L. Jolley, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

During the early morning hours of July 13, 1999, Kimberly Cunningham, the victim, arrived at Senor Frog's (a night club) with her friends Kim Cronan and Misty Kilgore. The victim and Ms. Kilgore proceeded to enter the club, when the victim noticed her ex-boyfriend, the Defendant, shooting his finger at her like a gun. The victim alerted Ms. Kilgore of the Defendant's presence and attempted to hold on to Kilgore's shirt, but Ms. Kilgore jerked her shirt away without paying the victim any attention. Then, the Defendant grabbed the victim by the back of her neck and led her

out of the club. The victim testified that the Defendant had grabbed her in this manner on prior occasions, during the time that they dated. She further stated that it had been sometime since she had seen the Defendant, as she had ended the relationship and taken out an order of protection against the Defendant.

After the victim and the Defendant got outside the club, the Defendant took the victim over to a Mercedes and held her face in his chest. The alarm on the car sounded, and the owner (a man named Church) came out to turn the alarm off. Church unlocked the door and the Defendant put the victim in the back seat and pulled her close to him. Then, Church and another man the victim knew as "Bo," got into the car. At that point, Ms. Kilgore ran to the car, but the Defendant would not roll-down the window. Church rolled down the window and asked Ms. Kilgore what she wanted. Kilgore stated that she wanted her money that the victim was holding for her. The Defendant jerked the money out of the victim's pocket and gave it to Ms. Kilgore, who left immediately with Ms. Cronan. The victim testified that she could not say anything to Ms. Kilgore, because the Defendant was still holding and squeezing her neck. Church left Senor Frog's and began driving down the interstate. Church asked the victim where she wanted to go, and the victim said to Kilgore's apartment. Church passed the exit leading to Kilgore's apartment, and the victim asked him to let her out along the interstate, but the three men laughed at her.

The victim was taken to the Old City. Church parked behind a red Saturn and the Defendant made the victim get out of Church's car and get into the Saturn that Defendant was driving. The victim stated that she saw people sitting in the area where the car was parked, but she did not say anything to them because she "was scared that nobody would help [her] and [she] would make the situation worse." The victim testified that she thought the Defendant might try to kill her. When Defendant got into the car, he hit the victim in the back of the head and she began to cry. The Defendant told the victim to stop crying and gave her something to wipe her face.

Then, the Defendant drove the victim to the home of a man called, Big Ed, who bought some drugs from the Defendant. From there, the Defendant took the victim to the home of his sister, Darlene. The Defendant went inside the house, while the victim sat in the car. The victim told the jury that she thought about leaving, but she knew she was in the "middle of the projects" and that no one was going to help her. The Defendant returned with the owner of the car and made the victim get of the car. The Defendant gave the owner her keys and cell phone. The victim and the Defendant sat on the porch at his sister's house, and the Defendant slapped the victim in her face, causing his sister to come outside. Defendant's sister asked him not to hit or argue with the victim on her front porch. The victim asked Darlene if she could use her phone, but Darlene did not respond. The victim testified that Darlene had been drinking.

The Defendant lit a marijuana 'joint' and made the victim smoke it about three times. The victim stated that she smoked the joint, because she knew that if she refused, the Defendant would start beating her. Then, the Defendant pulled out a bag of cocaine and tried to make the victim snort the cocaine, but the victim refused. The Defendant poured cocaine into the victim's mouth and made her drink beer to wash the cocaine down. The victim testified that she was afraid she was going to

die, because she did not know how much her beer and cocaine her body, before the drugs would make her ill. The victim further testified that, throughout the night, the Defendant would discuss, in the presence of his family, the order of protection she had taken against him. She stated that his family questioned and berated her for getting the order of protection.

Later, the Defendant and the victim left in the Defendant's car and made several other stops before the Defendant finally took the victim to the Economy Inn. The victim testified that the Defendant gave her $40 to get a room, which she did. She testified that she was afraid to alert the hotel desk clerk to her situation, because she did not think he would help her. When they got to the room, the Defendant locked the door, took off all of his clothes and lay on the bed naked. Then, the Defendant grabbed the victim by her hair and banged her head against his, and made the victim take off all of her clothes. Next, the Defendant slapped the victim in the face, grabbed her by the hair, forced her head between his legs and made her perform fellatio on him. The victim stated that the defendant told her that he was going to rape her and have anal sex with her.

After the Defendant completed fellatio, he made the victim lick his rectum. Then, he had vaginal intercourse with the victim. Next, the Defendant turned the victim over and had anal sex with her. The victim testified that, during the anal sex, the Defendant pressed her face into a pillow causing her to have difficulty breathing. During this time, the Defendant was screaming at the victim and telling her to shut up and that he was going to kill her. Finally, the Defendant allowed the victim to go to the restroom, where she stayed for five minutes until he made her come out. Again, the Defendant made the victim perform fellatio on him and have vaginal intercourse with him. Following this episode of sex, the victim was allowed to go to the bathroom again, where she stayed for about fifteen minutes.

The victim told the jury that, when she finally exited the bathroom, the Defendant was lying on the bed with his pants on, but he would not permit her to put her clothes on. She testified that she laid on the bed for approximately 15 or 20 minutes, before the Defendant passed out and went to sleep. The victim went to the bathroom, put on her clothes, grabbed a cigarette and lighter, and left the room. She explained that she took the cigarette and lighter, so that if the Defendant awakened and saw her leaving, she could tell him that she was going outside to smoke a cigarette. The victim ran to a room, which had its door open, and used another guest's phone to call 911. She also called her brother and asked him to call the police and their parents. Then she went to the motel's front desk and told the clerk that she had been raped, and that she needed to use the phone to call 911. She told the 911 operator that she had been raped. She was taken to Fort Sanders Regional Medical Center and examined by Dr. Douglas Holland. The victim stated that she did not consent to any of the sexual acts that occurred between her and the Defendant.

Dr. Holland testified that the victim was "visibly upset and crying" when he examined her. He also noted a scratch on the victim's right chin, tenderness on the right side of her neck, bruising on her right upper eye lid, breast tenderness, a scratch on her vulva, and a large bruise on the top portion of her rectum. He stated that these injuries were consistent with the victim's complaints. He further opined that it was very unlikely that these injuries were the result of consensual sex.

The Defendant testified that the victim willingly accompanied him from Senor Frogs and that she wanted to have sex with him. He further testified that he never hit or abused the victim in any manner, on the night of this incident. He admitted that he had hit the victim on prior occasions. The Defendant also testified that, on the day of this incident, he and the victim had been together from about 2:00 p.m. until 7:30 p.m. The Defendant said that the victim was supposed to call him, so that they could meet later in the evening, but the victim never called. Later, he saw her at Senor Frogs dancing with another man. He testified that, after the club closed, the victim agreed to leave with him. The Defendant explained that the victim became upset, when she found out he was driving another woman's car. He testified that the victim was arguing with him and wanted to fight with him. The Defendant told the jury that he did not force the victim to take the cocaine, but that she willingly snorted the cocaine. He stated that he and the victim had previously engaged in rough sex and that the victim enjoyed sex in this manner. He testified that the victim did not have any bruises or scratches on her the last time he saw her. He further stated that the victim had many opportunities to leave him that night, but she chose to stay with him.

Churchill Moore testified that he was with the Defendant at Senor Frogs, on the morning of these offenses. Moore stated that, as he left the club, he saw the Defendant and the victim "hugged-up" next to his Mercedes. Moore gave the Defendant and the victim a ride to the Old City, where Defendant had parked the Saturn he was borrowing from one of his girlfriends. During the drive to the Defendant's car, Moore overheard the Defendant arguing with the victim and fussing at her about what she had been doing at the club. At one point, the victim asked Moore to let her out on the interstate, but he refused. Upon dropping the Defendant and the victim off, Moore testified that the two exited out of his car on opposite sides and entered another car. Moore stated that he did not see the Defendant grab or force the victim into the other car.

Darlene Holmes, the Defendant's sister, testified that the victim came to her house almost everyday looking for the Defendant. She stated that, on the morning of this incident, the victim and the Defendant were at her home and argued on her front porch. Holmes testified that she overheard the victim arguing about the Defendant driving another woman's car. She also said that the victim willingly smoked marijuana as they all took turns smoking.

## ANALYSIS

### I. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient for a reasonable trier of fact to convict him of aggravated rape beyond a reasonable doubt. Specifically, the Defendant argues that, because the State failed to prove that he used force or coercion and the use of a weapon, the evidence is insufficient to sustain his convictions. See Tenn. Code Ann. §39-13-502(a)(1). The State argues that it was not required to prove any of the elements disputed by the Defendant, because the indictment charged the Defendant with three counts of aggravated rape as defined under subsection (2) of 39-13-502. The State further argues that the evidence was sufficient to convict the Defendant of aggravated rape resulting in bodily injury.

When evaluating the sufficiency of the evidence, we must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Keough, 18 S.W.3d 175, 180-81 (Tenn. 2000) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979)). We afford the prosecution the strongest legitimate view of the evidence in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Keough, 18 S.W.3d at 181 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)). Questions regarding the credibility of the witnesses; the weight to be given the evidence; and any factual issues raised by the evidence are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). On appeal, the defendant has the burden of overcoming the presumption of guilt. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991).

Aggravated rape is the "unlawful sexual penetration of a victim by the defendant . . . [when] the defendant causes bodily injury to the victim." See Tenn. Code Ann. § 39-13-502(a)(2). In the light most favorable to the State, the evidence was that the Defendant forced the victim to accompany him to a hotel, where he abused the victim and forced her to perform fellatio on him. The Defendant also forced the victim to engage in vaginal and anal sex with him. Dr. Holland examined the victim and testified that she suffered scratches, bruises, breast tenderness, and damage to her vaginal and rectal area, which were consistent with her complaints. Under these circumstances, we hold that the evidence is sufficient to support the Defendant's convictions for aggravated rape.

## II. Rule 609

The Defendant contends that the trial court improperly allowed the State to impeach him on cross-examination by asking him about two prior convictions for the sale of cocaine. He argues that the trial court failed to state on the record whether the probative value of this evidence substantially outweighed any unfair prejudice resulting from the admission of this evidence. The State responds that the Defendant has waived this issue for failing to raise the issue in his motion for new trial and for failing to submit an amended motion for new trial, the transcript of the hearing on this motion or a written order denying this motion. Although the Defendant failed to raise this issue in his motion for a new trial, we nonetheless find the appellate record is sufficient for us to address the merits of this issue.

Pursuant to Rule 609, the credibility of the accused may be attacked by presenting evidence of prior convictions if the conditions of the rule are satisfied, one of which is that the trial court must find that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609(a)(3). Here, the probative value of the sale of cocaine convictions on the issue of the Defendant's credibility was overwhelming, given the victim's contention that the Defendant poured cocaine down her mouth. Further, the conviction reflected the Defendant's inability to abide by the laws of this State. See generally State v. Farmer, 841 S.W.2d 837, 841 (Tenn. Crim. App. 1992). Moreover, because the convictions were for crimes substantially different than aggravated rape, we find that any resulting prejudice was minimal. See State v. Mixon, 983 S.W.2d 661, 674 (Tenn. 1999). Therefore, the probative value on credibility

outweighed the unfair prejudicial effect on the substantive issues. We conclude that the trial court did not abuse its discretion in allowing the State to impeach based upon these convictions.

### III. Sentencing

The Defendant's final challenge is to the sentence imposed by the trial court. The trial court sentenced the Defendant to serve twenty-two (22) years for each aggravated rape conviction. The court further ordered that the sentences be served consecutively to each other and consecutive to a previously imposed sentence of eight-years for the sale of cocaine. The Defendant also challenges the trial court's application of enhancement factor (7).

When a defendant appeals the manner of service of a sentence imposed by the trial court, this court conducts a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appealing party. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the sentence is purely de novo. Ashby, 823 S.W.2d at 169.

The appellant was classified as a 100% violent offender. The trial court found that Tenn. Code Ann. §§ 40-35-114 (1), (7), (8) and (13) enhancement factors applied to each of the Defendant's convictions. The trial court also gave some consideration to mitigating factor 40-35-113 (13). The Defendant concedes that each of the enhancement factors applied by the trial court were applicable to his case. However, he argues that the trial court misapplied factor (7), the offense was committed to gratify the defendant's desire for pleasure or excitement. After careful consideration, we find that the trial court followed the principles of sentencing and properly applied each factor. The evidence showed that the Defendant held the victim for a long period of time, made her perform fellatio on him, made her lick his butt, pinched her breast and made her have anal sex with him. Under these facts, we find that the evidence supports a finding that the Defendant raped the victim to gratify his desire for pleasure or excitement. See e.g., State v. Adams, 864 S.W.2d 31, 35 (Tenn.1993); State v. Alvarado, 961 S.W.2d 136, 152-53 (Tenn. Crim. App. 1993). Thus, the twenty-two-year sentences imposed were proper.

Regarding the issue of consecutive sentences, the Defendant does not challenge the trial court's application of Tenn. Code Ann. §§ 40-35-115(1), (2), and (6). However, the Defendant argues that the stacking of each of his convictions, for an effective sentence of sixty-six (66) years, was excessive and inappropriate. The record reflects that the trial court found the Defendant to be a professional criminal and his record of criminal activity to be extensive. See Tenn. Code Ann. §§ 40-35-115 (1) and (2). The presentence report indicated that Defendant has been convicted for the following crimes: sale of cocaine, vandalism not more than $500, traffic offenses, driving with a revoked license and other offenses which could not be defined. The trial court also found that the

Defendant committed these offenses while he was on probation.  See  Tenn. Code Ann. § 40-35-115 (6).  The trial court determined that society needed protection from the Defendant.  While we do not agree that the record supports a finding that the Defendant is a professional criminal, we find that the remaining two factors support the order of consecutive sentencing.

We also note that, not directly related to the direct appeal of his conviction, but brought to the attention of the court in this record, that the Defendant filed a *pro se* motion in the trial court for sanctions because of the State's failure to provide discovery.  This motion was filed in the trial court several months after notice of the appeal from the convictions was filed.  The trial court properly dismissed the motion because the case was pending in the Court of Criminal Appeals.  However, Defendant filed a notice of appeal from this order.  Subsequently, in late June, 2001, Defendant sent a letter to the clerk of this court expressing his desire to proceed *pro se*.

We take this opportunity to affirm the trial court's dismissal of the *pro se* motion for sanctions for failure to comply with discovery.  Under Tennessee law, it is well-settled that defendants are generally restricted from proceeding *pro se* while simultaneously being represented by counsel.  See State v. Burkhart, 541 S.W.2d 365, 371 (Tenn. 1976) ("[The accused] does not have a constitutional right under the State or Federal Constitution to participate [i]n propria persona in his own defense and simultaneously to be represented by participating counsel."); see also State v. Muse, 637 S.W.2d 468, 470 (Tenn. Crim. App. 1982) (stating that appellant may not file pro se motions while being represented by counsel) (citing Burkhart).  Additionally, "[i]t is generally held that whenever a court has acquired jurisdiction of a case, no other court may . . . interfere with its action in matters concerning which it has acquired jurisdiction."  See Terry Franklin Stodgill v. State, No. 03C01-9904-CR-00136, 1999 WL 1201825, at *1, Claiborne County (Tenn. Crim. App., Knoxville, Dec. 16, 1999) (quoting Jones v. State, 2 Tenn. Crim. App. 284, 453 S.W.2d 433 (Tenn. Crim. App. 1970).  Therefore, the trial court did not have jurisdiction to consider the motion for sanctions.  Insofar as Defendant's letter may be interpreted as a motion to relieve his counsel of record, that is also denied.

Accordingly, we find that the judgment of the trial court should be affirmed.

_____
THOMAS T. WOODALL, JUDGE

-7-