NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0089n.06

No. 21-5867

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MALIK D. HARDIN,

  Petitioner-Appellant,

v.

KEVIN GENOVESE, Warden,

  Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)
)

**FILED**
Feb 14, 2023
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

OPINION

Before: SILER, BATCHELDER, and KETHLEDGE, Circuit Judges.

BATCHELDER, J., delivered the opinion of the court in which SILER, J., joined. KETHLEDGE, J. (pp. 12–14), delivered a separate dissenting opinion.

ALICE M. BATCHELDER, Circuit Judge. Malik Hardin pleaded guilty to various drug and firearm offenses on March 5, 2014. After a confusing and protracted state-court process, he filed a federal habeas petition under AEDPA, 29 U.S.C. § 2254, on January 27, 2021. The government filed a motion to dismiss, alleging Hardin's habeas petition was untimely and therefore barred under AEDPA's statute of limitations. *See* 28 U.S.C. § 2244(d). The district court agreed and dismissed the action. Hardin now appeals, claiming that two motions filed during his state-court proceedings tolled AEDPA's statute of limitations. For the reasons set forth below, we AFFIRM.

**I.**

Prior to his guilty plea, Hardin sought to suppress evidence gathered against him, alleging various Fourth Amendment violations. The state trial court denied his motion to suppress, leading

Hardin to plead guilty given the strength of the evidence against him. His plea agreement reserved the right to appeal the trial court's denial of his motion to suppress. After judgment was entered, Hardin, through his attorney, filed a notice of appeal on May 5, 2014. While his direct appeal was pending and while represented by counsel,[1] Hardin filed a pro se motion in the trial court pursuant to Rule 36.1 of the Tennessee Rules of Criminal Procedure, challenging the legality of his sentence. This motion was filed May 14, 2014, and alleged that the sentence did not reflect the plea agreement, did not account for pretrial jail credits, and violated the Tennessee Criminal Sentencing Reform Act of 1989. A few days later, Hardin's attorney filed a notice of adoption in the trial court, stating he adopted all of Hardin's arguments in the pro se Rule 36.1 motion. But after this notice was filed, both it and the motion were apparently forgotten by Hardin, his counsel, the government, and the trial court.

Meanwhile, Hardin's direct appeal proceeded until the Tennessee Supreme Court denied permission to appeal on October 15, 2015. He did not seek certiorari in the United States Supreme Court. On September 19, 2016, Hardin, now not represented by counsel, filed two pro se motions, one a petition for post-conviction relief and the other a second Rule 36.1 motion to correct an illegal sentence. The trial court appointed counsel for Hardin to pursue the post-conviction petition. While represented by counsel and while his post-conviction petition was being litigated, Hardin filed a pro se motion for the correction of clerical error on December 18, 2017. The trial court did not immediately rule on the Rule 36.1 motion or the clerical-error motion. The trial court

---

[1] Hardin argues that he was not actually represented by counsel when he filed his 2014 pro se motion. The district court made a factual finding to the contrary, and we therefore must accept that finding unless it was clearly erroneous. It was not. Hardin was represented by counsel in the trial court and that same counsel filed a notice of appeal and was prosecuting his appeal when Hardin filed his pro se motion in the trial court. Hardin's attorney did not withdraw or otherwise notify the court that he no longer represented Hardin. Hardin disputes this finding, arguing that, as a functional matter, lawyers do very little in a trial court after they file a notice of appeal. Hardin cites no authority for this proposition nor for why it is even legally relevant. The district court did not commit clear error in finding that Hardin was represented when filing his pro se 2014 Rule 36.1 motion in the trial court.

denied the post-conviction petition on March 21, 2018. The Tennessee Court of Criminal Appeals affirmed on October 25, 2019, and the Tennessee Supreme Court denied permission to appeal on February 20, 2020.

On January 9, 2019, while the post-conviction petition was being appealed, the trial court denied Hardin's Rule 36.1 motion. More than a year and a half later, on September 22, 2021, the trial court granted in part and denied in part Hardin's motion for correction of clerical error.

Hardin filed a pro se habeas corpus petition in federal court on January 25, 2021. The government moved to dismiss the petition as untimely, which the district court granted, holding that the statute of limitations in 28 U.S.C. § 2244(d) had expired. Hardin appealed.

## II.

We review a district court's timeliness determination de novo and its factual findings for clear error. *DiCenzi v. Rose*, 452 F.3d 465, 467 (6th Cir. 2006); *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000).

AEDPA imposes a one-year statute of limitations on filing a habeas action in federal court, which begins to run upon the conclusion of direct review of the sentence or conviction. 28 U.S.C. § 2244(d)(1)(A). Direct review concludes upon a decision denying certiorari by the United States Supreme Court or upon the expiration of the period to seek certiorari. *See Wall v. Kholi*, 562 U.S. 545, 548 (2011). However, the one-year limitation period is tolled while a "properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2).

To prove timeliness, Hardin need only show that either his 2014 Rule 36.1 motion or his 2017 Rule 36 clerical-error motion was a "properly filed" collateral attack. If the 2014 Rule 36.1 motion was a properly filed collateral attack, then the clock stopped before it could even start, i.e.,

the statute of limitations was tolled from 2014 to 2019 by the Rule 36.1 motion and then, in an overlapping period, was tolled from September 2016 to February 2020 by the post-conviction motion. Under that scenario, the clock started in February 2020 and ran until Hardin filed his habeas petition in January 2021, eleven months later and within the one-year statute of limitations.

If the 2017 clerical-error motion was a properly filed collateral attack, then the clock started upon the conclusion of direct review (in this case, January 14, 2016[2]) and ran until Hardin filed his post-conviction petition (September 19, 2016), just over eight months later. The limitation period was then tolled by the post-conviction petition from 2016 to 2020 and tolled by the clerical error motion in an overlapping period from 2017 to 2021, by which time Hardin had filed his federal habeas petition.

Therefore, the timeliness of Hardin's petition turns on whether either his 2014 Rule 36.1 motion or his 2017 clerical-error motion was "properly filed" and initiated "collateral review" as required under AEDPA.

### III.

Neither party disputes that the 2014 Rule 36.1 motion initiated collateral review. The only issue is whether this motion was "properly filed." We hold that it was not.

### A.

A petition is properly filed when "its delivery and acceptance are in compliance with the applicable laws and rules governing legal filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). However, whether a rule "govern[s] legal filings" is often difficult to discern. *See, e.g.*, *Pace v. DiGuglielmo*, 544 U.S. 408 (2005); *Allen v. Siebert*, 552 U.S. 3 (2007).

---

[2] The Tennessee Supreme Court denied Hardin's direct-appeal application on October 15, 2015. Hardin had 90 days to seek certiorari review in the United States Supreme Court. Sup. Ct. R. 13.1. That 90-day period ended on January 13, 2016, which caused the clock to start the next day, January 14, 2016.

In *Artuz*, 531 U.S. at 8, the Court rejected the argument that all procedural bars to a collateral attack render the petition not "properly filed." The Court held that only those rules that set forth "a condition to filing, as opposed to a condition to obtaining relief," render a petition improperly filed. *Id.* at 11. So, when the petitioner filed a second post-conviction petition that was procedurally barred because the New York courts had previously heard an identical claim, the Court held that the petition was "properly filed," albeit unmeritorious. *See generally id.*

In *Pace*, 544 U.S. at 410, the Court held that a Pennsylvania statute of limitations for state post-conviction petitions was a "condition to filing" and rendered the untimely petitions improperly filed for purposes of AEDPA. The Court stated, "there is an obvious distinction between time limits, which go to the very initiation of a petition and a court's ability to consider that petition, and the type of 'rule of decision' procedural bars at issue in *Artuz*, which go to the ability to obtain relief." *Id.* at 417.

To determine whether the petition was properly filed, then, we must turn to the rules governing Hardin's Rule 36.1 petition: in this case, Tennessee law. Under Tennessee law, a criminal defendant does not have the right both to be represented by counsel and to simultaneously proceed pro se. *Tennessee v. Burkhart*, 541 S.W.2d 365, 371 (Tenn. 1976). Tennessee courts have consistently restricted this practice. *See Hill v. Carlton*, 399 F. App'x 38, 43 (6th Cir. 2010). However, whether a defendant may proceed with hybrid representation is a matter of discretion for the trial court. *Tennessee v. Small*, 988 S.W.2d 671, 673 (Tenn. 1999). Pursuant to that discretion, a trial court may refuse to consider a pro se filing, *see Tennessee v. Thigpen*, No. 18-00118, 2020 WL 755178, at *6 (Tenn. Crim. App. Feb. 14, 2020), or may strike a pro se brief from the record. *Jackson v. Tennessee*, No. 01-00901, 2001 WL 1381273, at *2 n.1 (Tenn. Crim. App. Nov. 7, 2001).

**B.**

Applying these rules to Hardin's claims in this appeal raises two questions: 1) is the prohibition against hybrid or dual representation a "condition to filing" or a "rule of decision," and 2) even if it is a condition to filing, did the trial court waive that condition by failing to prohibit Hardin from filing his motion?

Tennessee's general prohibition against hybrid representation is a condition to filing, not a rule of decision. The prohibition turns not on the content of any filing but on the form. The court need not examine the merits of any claim raised to determine whether to accept or reject the filing. It need only determine that 1) the filing was completed by the defendant himself, and 2) the defendant was represented by counsel when filing the motion. Unlike rules of decision, which turn on the merits of a legal claim, this type of rule targets the "initiation of a petition" without regard to the petitioner's "ability to obtain relief." *Pace*, 544 U.S. at 417.

That the trial court may exercise discretion to accept a pro se filing from a represented defendant does not change our conclusion. The Supreme Court, when holding that statutes of limitation are conditions to filing under AEDPA, rejected an argument that the propriety of the filing turns on whether the rule was jurisdictional in nature. *See Allen*, 552 U.S. at 6 ("Whether a time limit is jurisdictional, an affirmative defense, or something in between, it is a 'condition to filing.'"). The logical implication of that holding is that some rules, the enforcement of which would normally render a filing improper, may be waived and need not apply in all cases. That characteristic, however, does not render Tennessee's rule any less a condition to filing. Just because a Tennessee trial court *may* permit a pro se filing from a represented defendant does not mean the general *rule* that such a practice is not allowed is anything other than a filing condition.

6

What happens, then, when a trial court is imbued with discretion but takes no action to either permit or forbid hybrid representation? The paucity of Tennessee law on the issue suggests that anything less than a trial court's affirmatively permitting the hybrid representation renders it improper. The Tennessee Supreme Court has stated that hybrid representation "is entirely a matter of grace for a defendant . . . and such privilege *should be granted* by the trial court only in exceptional circumstances." *Small*, 988 S.W.2d at 673 (quoting *Tennessee v. Melson*, 638 S.W.2d 342, 359 (Tenn. 1982)) (emphasis added). If hybrid representation is a "matter of grace" that requires the express approval of the trial court then the absence of that approval precludes hybrid representation. Furthermore, the Tennessee Supreme Court requires trial courts to consider several factors before permitting the counseled defendant to participate pro se, bolstering the conclusion that the *absence* of any consideration of those factors triggers the no-hybrid-representation-rule. *Burkhart*, 541 S.W.2d at 371.

Because the prohibition against hybrid representation is a condition to filing and because Hardin had counsel and received no affirmative permission from the trial court to participate pro se, his 2014 Rule 36.1 motion was not "properly filed" and did not toll AEDPA's statute of limitations.

### C.

Counsel's notice of adoption in the trial court did not cure this defect. The notice simply notified the trial court, without seeking a ruling, of counsel's intent to place his imprimatur on the pro se motion without filing his own. However, hybrid representation requires an affirmative *grant* by the trial court, not passive silence. It follows that the remedy for violating that rule is to seek leave to file an amended motion, not to file a perfunctory notice with no court approval.

The principle behind the no-hybrid-representation rule supports this conclusion. The Tennessee Supreme Court requires a trial court to consider whether a defendant is "seeking to disrupt orderly trial procedure" before granting the privilege of hybrid representation. *Burkhart*, 541 S.W.2d at 371. Allowing represented defendants to file whatever they wish without (or contrary to) the assistance of their attorney, followed by the attorney's adoption of that filing without any attempt to conform to the rules of procedure, or to ease the court's workload, would disrupt "orderly trial procedure."

We hold that, under Tennessee law, simple notices of adoption are insufficient to cure a hybrid representation defect and do not render a pro se filing by a represented defendant "properly filed." But we acknowledge the veritable void of Tennessee authority on the issue. Neither we nor the parties could find more than two cases, both unpublished orders, dealing with notices of adoption. *See Tennessee v. Allman*, No. M2021-00196-CCA-R8-CO (Tenn. Crim. App. Mar. 17, 2021); *Tuttle v. Tennessee*, No. M2018-00768-CCA-R3-PC (Tenn. Crim. App. Aug. 23, 2018). Neither dealt with a precedential legal principle but reflected only that court's discretion in dealing with the adoption of pro se filings. They provide no guidance here, where the trial court appears to have ignored the notice.

## IV.

The 2017 clerical-error motion also failed to toll AEDPA's statute of limitations. If the motion was truly a clerical-error motion, that is, if it sought only to correct typographical errors on the judgment document, then it did not initiate "collateral review" under 28 U.S.C. § 2244(d)(2). If the motion was, in substance, *not* a clerical-error motion but rather a motion for post-conviction relief, then it was untimely and therefore not "properly filed."

**A.**

To toll AEDPA's statute of limitations, any petition must initiate "State post-conviction or other collateral review." 28 U.S.C. § 2244(d)(2). "Collateral review" means a "judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." *Wall*, 562 U.S. at 553. It need not attack the merits of the conviction or raise any specific legal argument so long as it initiates review, in a proceeding outside of the direct appeal process, that allows a court to order relief from criminal judgment. *See id.* at 553, 556 n.4 (review involves "examination with a view to amendment or improvement" and is distinct from discovery motions, which do not give court the power to order relief). This relief includes the reduction of a sentence. *Id.* at 556.

Tennessee Rule 36 clerical-error motions do not initiate "collateral review" under AEDPA because they provide no avenue for relief from, or for a legally effectual amendment to, the criminal judgment. *See Tennessee v. Allen*, 593 S.W.3d 145, 154 (Tenn. 2020) (reversing a vacatur of a criminal judgment and stating the vacatur "exceeded the authority Rule 36 provides"); *see also Cantrell v. Easterling*, 346 S.W.3d 445, 449 (Tenn. 2011) (differentiating clerical errors from appealable errors and fatal errors, both of which offer an avenue of relief). The point of a Rule 36 motion is to correct any clerical mistakes made in transcribing the sentence as it was orally imposed at the sentencing hearing, because the oral statement controls over the uniform judgment document. *Tennessee v. Brown*, 479 S.W.3d 200, 213 (Tenn. 2015) (citing *Tennessee v. Moore*, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991)); *Cantrell*, 346 S.W.3d at 457.

Hardin argues otherwise, claiming that the Supreme Court's broad language in *Wall* demonstrates that even clerical error corrections qualify as "collateral review." To be sure, the Court stated that the dictionary definition of review includes an "act of inspecting or examining," and that in the judicial context "review" must mean "judicial reexamination of a judgment or

9

claim." *Wall*, 562 U.S. at 553. However, Hardin's argument overlooks the Court's actual analysis of the case before it.

The *Wall* Court held that a Rhode Island Rule 35 motion—Rhode Island's vehicle for a discretionary sentence reduction—initiated collateral review, explaining that the rule allowed "reexamination of the *sentence* to determine whether a more *lenient sentence* was proper." *Id.* at 556 (emphasis added). The Court then included a footnote, writing, "A motion to reduce sentence is unlike a motion for post-conviction discovery or a motion for appointment of counsel, which generally are not direct requests for judicial review of a judgment and do not provide a state court with *authority to order relief* from a judgment." *Id.* at 556 n.4 (emphasis added).

*Wall* stands for the proposition that review of a pleading seeking any kind of relief from a judgment, whether a discretionary plea for reduced sentence or a substantive attack on the judgment of conviction, qualifies as "collateral review." *Wall* did not hold or imply that motions seeking clerical corrections to judicial documents, which provide no relief from a judgment, can initiate collateral review.

**B.**

Hardin alternatively argues that the clerical-error motion did not *actually* seek correction of a clerical error but raised substantive attacks on his conviction, including constitutional claims. He argues that we should weigh his motion according to its content, not its caption. The content of his clerical-error motion raises an involuntary plea claim, a constitutional attack on the validity of his plea. This constitutional claim requires us to construe his motion as a post-conviction petition. But this raises a separate obstacle for Hardin: Post-conviction petitions are subject to

their own set of procedural rules.[3] Under Tennessee Code Annotated § 40-30-102, a petitioner may not file a post-conviction petition more than a year after the end of direct review of the judgment. Hardin's direct review ended in January 2016. He did not file his clerical error motion until December of 2017, almost two years later. Therefore, as a post-conviction petition, this was untimely and improperly filed. *See Pace*, 544 U.S. at 417.

## V.

Because neither motion tolled AEDPA's statute of limitations, Hardin's federal habeas petition was untimely, and the district court correctly dismissed it. We AFFIRM the judgment of the district court.

---

[3] Hardin contended at oral argument that his 2017 motion was timely under Rule 36 and hence tolled the statute of limitations. But he cannot have it both ways. This 2017 motion was either a timely filed motion whose function is limited to the correction of a clerical error and which cannot impact the running of the statute of limitations, or it was an untimely attempt to initiate collateral review of his conviction and hence was not properly filed.

KETHLEDGE, Circuit Judge, dissenting. In December 2017, Malik Hardin properly filed a motion asking the trial court to amend its criminal judgment to account for over two years of time served—which the court in fact did after an evidentiary hearing. That motion was an application for "collateral review" as the Supreme Court defined that term in *Wall v. Kholi*, 562 U.S. 545, 553 (2011). The motion therefore tolled the limitations period for Hardin's habeas petition, which made the petition timely.

"Collateral review means a form of review that is not direct." *Id.* Here, everyone agrees that Hardin's 2017 motion stood apart from his direct appeal. Hence the motion was undisputedly "collateral"; the question is whether it sought "review" of his criminal judgment.

As defined by the Supreme Court for purposes of § 2244(d)(2), "[r]eview commonly denotes a looking over or examination with a view to amendment or improvement." *Id.* (cleaned up). Hardin's motion requested that his criminal judgment be amended to reflect the entirety (and not just a part of) his time served before its entry. By way of background, the Tennessee statute governing credit for time served provides as follows:

> The trial court shall, at the time the sentence is imposed and the defendant is committed to jail, the workhouse or the state penitentiary for imprisonment, render the judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in the . . . county jail or workhouse, pending arraignment and trial.

Tenn. Code Ann. § 40-23-101(c). Thus, under the Tennessee statute, the state trial court must determine the defendant's time served and incorporate that determination in "the judgment of the court." *Id.*; *State v. Brown*, 479 S.W.3d 200, 212 (Tenn. 2015). And if the trial court errs in that determination, the defendant is entitled to "the entry of a corrected judgment reflecting [the missing] credits." *State v. Pearce*, No. W2020-0552-CCA-R-CD, 2021 WL 3136727 at *4 (Tenn. Crim. App. 2021).

12

As the Tennessee Supreme Court recently confirmed, the proper remedy for that kind of mistake is "to seek correction of a clerical mistake pursuant to Tennessee Rule of Criminal Procedure 36." *Anderson v. Washburn*, __ S.W.3d __, 2019 WL 3071311 (Tenn. 2019). That is what Hardin did here. The trial court eventually held an evidentiary hearing on Hardin's motion and concluded it had indeed made several mistakes in calculating his pretrial jail time. Those mistakes were not mere scrivener's errors; instead, the court reexamined the record and recalculated the credit for time served to which Hardin was entitled under the statute. And having done so, the court entered a "corrected judgment in Count 1 to accurately reflect the correct amount of pretrial credit earned as set forth herein[.]" Pursuant to Hardin's motion, therefore, the court reexamined its earlier judgment "with a view to amendment or improvement." *Wall*, 562 U.S. at 553. Hence the motion was one for "collateral review."

The warden argues that correcting a judgment differs from amending it. As an initial matter, under *Wall*, what matters is whether the motion sought "examination" of the judgment "with a view to amendment or improvement." *Id*. The warden overlooks the "improvement" part of that definition; and he offers no explanation as to why the correction of a judgment—resulting in the entry of a *new judgment*—does not count as an improvement over the old one. Moreover, to answer the warden's argument on its terms, Tennessee courts use the terms "corrected" and "amended" interchangeably when describing the new judgment to which a defendant is entitled upon a recalculation of his time served. *See, e.g., State v. Mason*, No. E2019-00916-CCA-R3-CD, 2020 WL 974207 at \*2 (Tenn. Crim. App. 2020) ("the trial court erred by failing to enter an amended judgment to reflect Defendant was entitled to credit for time served"). Nor is it true that Tennessee courts lack power to "amend" their final judgment in response to a Rule 36 motion. *See*

*Anderson,* 2019 WL 3071311; *Mason*, 2020 WL 974207 at *2.   Under Tennessee law and § 2244(d)(2) alike, the distinction between "amend" and "correct" is mere semantics.

The dispositive point here is that, in *Wall*, the Supreme Court broadly defined the term "review" as used in § 2244(d)(2).   And the Court rather pointedly applied that definition without limiting it to certain categories of review.   What matters is not whether the defendant seeks review of the judgement's "lawfulness," as the State argued there, or review for purposes of an "amendment," as the State argues here.   *Wall*, 562 U.S. at 557-58.   Instead, § 2244(d)(2) by its terms requires only that the requested review be "collateral"—which, in the case of Hardin's 2017 motion, the review undisputedly was.   Under a straightforward application of *Wall*, Hardin's 2017 motion sought (and obtained) "judicial review in a proceeding outside of the direct review process."   *Wall*, 562 U.S. at 560.   The result is that his habeas petition was timely.   I respectfully dissent.